■ ALEXANDER'S, INC., Petitioner, v DOUGLAS H. WHITE, as Commissioner of the New York State Division of Human

Rights, Respondent.—Petition seeking review of a determination of respondent Commissioner of the State Division of Human Rights, dated December 18, 1984, which found that Alexander's had discriminated against complainant Macieo A. Ely because of his race and color in violation of the State Human Rights Law (Executive Law art 15) and which directed Alexander's to offer employment to Ely with back pay and awarded $3,000 to him as damages for mental anguish, is granted and the determination of the respondent Commissioner is annulled, on the law, without costs or disbursements.

In his complaint, Ely described himself as black and charged that he was interviewed by Alexander's for a position as department manager at its main store, but was not hired because of his race and color. This charge was subsequently replaced by a Division ordered amendment charging a discriminatory practice in that Alexander's made an unlawful preemployment inquiry of complainant as to his racial identity.

At the hearing complainant testified about his interview with the screening interviewer, Barbara Andersen:

"A. During the interview she questioned my racial—how do I racially identify myself.

"Q. What did you say?

"A. I said I was an American.

"Q. What did she say?

"A. She said that doesn't—what is that?

"Q. What did you say?

"A. I said, 'Well, French, English, black', and then she volunteered information about how she racially identified herself.

"Q. What did she say about that?

"A. She was black and Indian."

This testimony does not accord with that of the screening interviewer. Her best recollection was that in a conversation unrelated to her job interview records complainant "questioned my racial identity and volunteered that he was a mixture of French, American Indian and black."

Complainant testified that during the course of his interview with the screening manager, Frances Sacs, she asked him, "What are you?" or "What do you consider yourself", to which he made no response.

Following the hearing, the presiding Administrative Law Judge proposed findings to the Commissioner that Alexander's

had not unlawfully discriminated in failing to hire complainant but that it had made an unlawful preemployment inquiry. The Commissioner adopted alternative proposed findings that Alexander's had discriminated by denying complainant employment because of his race and color and, leading to this finding, that Alexander's screening interviewer "acknowledged that she may have induced complainant to offer information as to his racial identity" and that Alexander's screening manager made a direct inquiry as to complainant's race.

There is no evidence to support a finding that Alexander's ever denied complainant a job. The evidence is that, after complainant had not heard about his application and had received no answers to his inquiries, it was learned that his application had been lost. Alexander's then asked complainant to submit another. He did not. About this time, he obtained another job, at higher pay.

It is an unlawful discriminatory practice for an employer "to make any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color or national origin" (Executive Law § 296 [1] [d]). Thus, an inquiry about race is not discriminatory; the inquiry must express a " 'limitation, specification or discrimination' " *(see, Matter of New York Times Co. v City of New York Commn. on Human Rights,* 41 NY2d 345, 349). The Commissioner contends he had the right to infer that the inquiries made of complainant were an expression, albeit indirect, of a racial limitation. An inference, however, must be a reasonable conclusion flowing logically from proven facts (Bender's New York Evidence, § 1; 21 NY Jur, Evidence, § 90). None of the facts found by the Commissioner lead to the result he reached. The testimony given leads to a contrary inference. The screening interviewer herself was black, she found the complainant's job experience qualifying, and out of 10 applicants she approved and passed along only the complainant and another for further interview by her superior, the screening manager. The latter, according to the complainant, found him well qualified, very "strong in many areas" and said she would send complainant's application and resumé to other departments for consideration. The record also indicates that a large part of the work force at Alexander's main store is black and that, during this general time span, blacks were hired for and internally promoted to the position of department manager. Concur—Sandler, J. P., Sullivan, Bloom, Lynch and Kassal, JJ.