[642 NYS2d 638]

In the Matter of 119-121 EAST 97TH STREET CORP. et al., Appellants, v NEW YORK CITY COMMISSION ON HUMAN RIGHTS et al., Respondents.

First Department, May 14, 1996

## APPEARANCES OF COUNSEL

*Robert N. Marx* of counsel *(Jean Simonoff Marx* on the brief; *Marx & Marx,* attorneys), for appellants.

*Helen P. Brown* of counsel *(Kristin M. Helmers* and *Shari M. Goodstein* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for New York City Commission on Human Rights, respondent.

*Lisa A. Cahill* of counsel *(Edward J.M. Little* on the brief; *Zuckerman, Spaeder, Goldstein, Taylor & Kolker,* attorneys), for Edward L. Baca, respondent.

## OPINION OF THE COURT

NARDELLI, J.

This appeal involves findings by the respondent Commissioner that petitioners, respondent Baca's landlords, discriminated against him on the basis of sexual orientation and disability (Mr. Baca is HIV positive), in violation of the Administrative Code of the City of New York, by repeated written and verbal attacks and other abusive acts against him that took place over a period of a year and a half.

The Commissioner accepted the recommendation of the Administrative Law Judge (ALJ) and, *inter alia,* awarded the respondent Baca $100,000 for mental anguish and assessed a civil penalty of $75,000 against the petitioners for their actions.

Section 8-110 of the Administrative Code provides that the "findings of the commission as to the facts shall be conclusive if supported by sufficient evidence on the record considered as a whole". In a subsequent judicial proceeding reviewing such findings, we are constrained by that standard (*see, Matter of Pace Coll. v Commission on Human Rights,* 38 NY2d 28, 35). The standard of review which guides us with "sufficient evidence" pursuant to Administrative Code § 8-110 is similar, if not identical, to the "substantial evidence" rule applied in CPLR 7803 (4) proceedings (*Burlington Indus. v New York City Human Rights Commn.,* 82 AD2d 415, 417, *affd* 58 NY2d 983). That latter standard is "related to the charge or controversy and involves a weighing of the quality and quantity of the proof * * *; it means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate

fact * * *. Essential attributes are relevance and a probative character * * *. Marked by its substance—its solid nature and ability to inspire confidence, substantial evidence does not rise from bare surmise, conjecture, speculation or rumor * * *. More than seeming or imaginary, *it is less than a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt"* (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180-181 [emphasis added]).

Thus, where there is substantial *or* sufficient evidence to support an administrative determination, "that determination must be sustained, irrespective of whether a similar quantum of evidence is available to support other varying conclusions" (*Matter of Collins v Codd*, 38 NY2d 269, 270).

█ Here there was "sufficient evidence" in the record as a whole to support the determination. The Administrative Law Judge found the testimony of Mr. Baca to be credible and the petitioners to lack credibility. Moreover, he found that Baca's testimony was corroborated by the testimony of his attorney, his employer and the petitioners' former superintendent. The Administrative Law Judge found that petitioners violated Administrative Code § 8-107 (5) (a) (1), which makes it an unlawful discriminatory practice to refuse to rent or lease a housing accommodation because of the actual or perceived disability or sexual orientation of the lessee. The ALJ also found that petitioners discriminated against respondent Baca "in the terms, conditions or privileges" (Administrative Code § 8-107 [5] [a] [2]) of the rental of the housing accommodation. Both of these determinations were supported by "sufficient evidence" at the hearing.

Over the course of 18 months, the petitioners either committed or engaged others to commit acts of harassment due to bias against the respondent Baca. Thus, petitioners commissioned someone or acted themselves to burglarize respondent's apartment, disabled his door locks, and turned off his electricity. Petitioners refused to accept his timely rent checks, refused to renew his lease, and commenced eviction proceedings against respondent. Petitioners verbally and physically accosted respondent Baca and encouraged their employees to do so, including calling him, in public, a "faggot punk", "male whore", and "sicko", telling him he had AIDS and they hoped he died, leaving threatening messages on his answering machine, distributing a notice to tenants in respondent's building informing them of his Human Rights complaint and HIV status and warning the tenants not to cooperate with him. Mrs. Rosasco claimed in

a letter to the Commissioner to have discovered that respondent was lying about his HIV status after having investigated his health on a hospital computer. Petitioners telephoned or had someone telephone respondent's employer Mrs. Colon, and divulged his HIV status. Mrs. Rosasco also sent Mrs. Colon a copy of the amended complaint with a typewritten note at the top asserting that respondent was dangerous and vicious.

The facts which were adduced at the hearing and the principles of law which govern our review of the determination lead to the inescapable conclusion that there *was* "sufficient evidence" at the hearing to support the Administrative Law Judge's determination. The petitioners make much of the fact that after the hearings respondent Baca admitted that he perjured himself at the hearing when he admitted, contrary to his testimony, that on one occasion he had called Mrs. Rosasco, merely identified himself and then hung up, and that he had once gone to the residence of the Rosascos but never spoke to them at that time. However, in the recommended decision and order on remand the Administrative Law Judge, in adhering to the previous findings of fact, conclusions of law and provisions in the prior order, correctly noted that a fact-finder may choose to credit parts of a witness' testimony, notwithstanding an attack upon another part of that testimony. Further, the ALJ noted that the admissions concerned matters not relied upon for his findings, and related to clearly tangential matters. The Law Judge pointed out that even if he were to reconsider Baca's credibility, his ultimate findings would remain unchanged, and that the complainant's testimony was corroborated. Thus, the former building superintendent, John McGhee, corroborated the verbal harassment by the petitioners of Baca and the request to McGhee to tamper with complainant's locks, mail and electric service. Both McGhee and attorney Martha Jones corroborated complainant's accounts of Mrs. Rosasco's outbursts in public referring to complainant having AIDS and wishing he die a slow and painful death.

▇ In a case where the New York State Division of Human Rights found that the New York City Transit Authority had discriminated against an employee on the basis of her gender and awarded her $450,000 for mental anguish, the Second Department reduced the award to $75,000. It noted, *inter alia:*

"It is well settled that an award of compensatory damages to a person aggrieved by an illegal discriminatory practice may include compensation for mental anguish (*see, Matter of Board of Educ. v McCall*, 108 AD2d 855), and that an award may be

based solely on the complainant's testimony (*see, Cullen v Nassau County Civ. Serv. Commn.*, 53 NY2d 492; *Matter of Cosmos Forms v State Div. of Human Rights*, 150 AD2d 442). However, in this case, notwithstanding the blatant discrimination against Nash solely because of her pregnancy, the evidence of mental anguish did not justify an award of damages in the amount determined by the respondent Commissioner. * * *

"However, with respect to her testimony concerning the 1981 and 1982 incidents, Nash failed to adduce facts concerning the duration of her condition, its consequences, or any evidence concerning any treatment (*see, Matter of Cosmos Forms v State Div. of Human Rights, supra*, at 442). Therefore, we find the award of $450,000 for mental anguish grossly excessive and recommend that a new award not to exceed $75,000 be made on remittitur [citations omitted]." (*Matter of New York City Tr. Auth. v State Div. of Human Rights*, 163 AD2d 315, 316.)

The Court of Appeals reversed this order, finding:

"To the extent the Appellate Division reviewed the evidence, drawing a parallel to its own recent decision in *Matter of Cosmos Forms* (150 AD2d 442, *supra*), its conclusions are incorrect. In *Cosmos*, the only evidence of mental anguish was the complainant's own testimony that she was emotionally and physically 'screwed up.' (*Id.*) While it is certainly appropriate for the Appellate Division—in its unique role of reviewing a compensatory damage award for excessiveness—to apply objective criteria such as the duration of a complainant's condition, its severity or consequences, any physical manifestations, and any medical treatment, this case is not *Cosmos*. * * *

"Without further recapitulating the record, it is sufficient to note that the Appellate Division, in exercising its authority to review the Commissioner's award for legal error and excessiveness, did not do what the law required it to do: determine whether the relief was reasonably related to the wrongdoing, whether the award was supported by evidence before the Commissioner, and how it compared with other awards for similar injuries." (*Matter of New York City Tr. Auth. v State Div. of Human Rights*, 78 NY2d 207, 218-219.)

Upon the remittitur, the Second Department sustained the $450,000 award holding, *inter alia*:

"Upon our further review of the record before the Commissioner, and reconsideration of our decision in light of the standard and guiding considerations enumerated in the opinion of the Court of Appeals, we now conclude that the Commissioner's

award of compensatory damages must be sustained. An award of damages was warranted in order to compensate the complainant for her demonstrated mental anguish, and was reasonably related to the wrongdoing in this case, described by the Hearing Judge as 'the most shocking instance of abuse of an employee by an employer' in his 20-year experience with the Division of Human Rights.

"In addition, there is sufficient evidence in the record of the magnitude of the complainant's injury to assure us that the award was neither punitive nor arbitrary. The complainant was the victim of a series of four intentional episodes of sex discrimination that continued for a period of in excess of one year. She testified that she suffered anguish, guilt, depression, and anger at the time of each occurrence" (*Matter of New York City Tr. Auth. v State Div. of Human Rights*, 181 AD2d 891, 894-895).

The testimony of the complainant alone will suffice to sustain an award for mental anguish (*Cullen v Nassau County Civ. Serv. Commn.*, 53 NY2d 492, 497, *supra*). Further, evidence of mental treatment is *not* required for a finding of mental anguish (*see, New York City Police Dept. v DeLeon*, Sup Ct, NY County, July 28, 1992, Altman, J., index No. 40191/92, *affd for reasons stated by* Altman, J., 201 AD2d 260, *lv denied* 83 NY2d 757). In the *DeLeon* case, the testimony of the complainant as to the retaliation she was subjected to was sufficient to support a mental anguish award of $250,000 without any medical evidence.

In this case, the award for mental anguish was amply supported by the record. During the entire period of harassment the complainant was suffering with the serious and incurable illness of AIDS. The complainant's testimony revealed that over a period of a year and a half he suffered growing anger, a sense of outrage and horror at the discriminatory indignities, insults, and even unlawful acts perpetrated upon him by the petitioners. Thus, after being informed that the Rosascos were responsible for his electricity interruptions, break-in, doorbell and telephone harassment, complainant "was extremely angry" and "tired" of having such "a negative place to live at". During this time, when Louis Rosasco called him a "faggot punk" and told him to "get out", and Dorothea Rosasco called him a "sicko" and told him he would be out in the street, complainant "was feeling sick at the time so it just felt worse. * * * I just felt real depressed". Thereafter when Mrs. Rosasco shouted at respondent Baca in public (in the court as a matter

of fact) that she hoped he would die from AIDS, he testified: "There was already a lot going on with me in terms of my own health. I really just didn't need to hear this. I was very angry". He testified that during a hospitalization for his illness "her voice just kept coming back, that she hopes that I would die from AIDS and I really thought that that was what was happening". Shortly afterwards, when Mrs. Rosasco called him and told him she would see to it that he never worked again, he "felt threatened by it. I felt she was going to try to stop me in every way possible". Baca testified that he felt the posting of the notice in the building informing every tenant of his HIV status, sexual orientation and legal disputes with the landlords violated matters that "should be very personal". Upon hearing the first threatening message left on his answering machine, Baca testified he feared for his own personal safety and he felt "outrage" when he received a copy of the letter sent by Mrs. Rosasco to the Commission where she claimed to have investigated his HIV status. Again receiving a telephone call from Mrs. Rosasco where she called him a "male whore", complainant Baca became "very upset one more time".

During another public outburst by Mrs. Rosasco where she told him she wanted him to die a slow and painful death, Baca testified as to his feelings: "I just know that that will be what will happen, so it does play with your worst fears with this disease. And, of course, there is just a lot of anger when somebody says that to you. You feel like there is evil presence that comes from this woman when she says these things, but I know that deep in her heart that's really what she wants."

After the petitioners mailed a copy of the complaint filed with the Commission to his employer with the information contained that he is gay and HIV positive and the added notation that he is "dangerous and vicious", Baca said he felt "Rage, I just thought it was a most outrageous thing. There's just no limits. I mean absolutely no limits. Her conduct can't be controlled by anybody". This act also affected Baca's relationship with his employer. Where previously a lot of work would be done out of her personal home, Baca was no longer invited to it. Where there was "just a lot of hugging and stuff like that. There's just a lot of distance now. * * * You feel like you are just dirty and you are going to spread something by your mere presence". There was even corroboration, although none was needed, as to the torment and great mental anguish suffered by Baca. His employer testified of Baca, "he was very upset. He was disturbed. He couldn't concentrate too much on

his—the work that he had to do for me, and he was * * * very upset * * * very nervous, very disoriented, disturbed, just very upset".

The above meets the first two factors in the test set forth by the Court of Appeals as to the standard we should apply in reviewing the award both for legal error and excessiveness, i.e., "determine whether the relief was reasonably related to the wrongdoing" and "whether the award was supported by evidence before the Commissioner" (*Matter of New York City Tr. Auth. v State Div. of Human Rights*, 78 NY2d, *supra,* at 219). The third and final factor, "how it compared with other awards for similar injuries" *(supra,* at 219), was also considered and met in this case. The Administrative Law Judge relied upon *Velazquez v Salinas Realty Corp.* (compl. No. GA-00299061190-H [1992] in reaching his recommendation as to the award by noting: "The only case comparable to this one in terms of horrendous abuse in a housing discrimination context is *Velazquez, supra.* In *Velazquez,* the Respondent landlord referred to the Complainant and his life partner as 'faggots' and threatened to throw the 'faggot out into the street'. Respondents also referred to Complainant as 'dirty queer' and lamented that despite his having AIDS, he would 'last' a while. Requests for repairs were met with the response 'go to hell' and numerous insults and menacing comments were made by Respondents in public such as at a local store. Velazquez was awarded $75,000 as compensation for his mental anguish."

In *Matter of New York City Tr. Auth. v State Div. of Human Rights* (181 AD2d, *supra,* at 892), the Second Department, after remittitur from the Court of Appeals, affirmed an award of $450,000 for mental anguish for sex discrimination. Finally, this Court has upheld an award for mental anguish to a victim of retaliation in the amount of $250,000 (*New York City Police Dept. v DeLeon, supra*). While the petitioners rely upon a number of cases where the Human Rights Commission awards for mental anguish *under* $100,000 were either upheld or reduced by the courts, those cases are readily distinguishable from the instant case. They involve single incidents of discrimination with no evidence of maliciousness or with no showing of the existence, duration or severity of mental distress evident in this case.

Since all the factors have been met, we are compelled to sustain the award for mental anguish (*see, Matter of New York City Tr. Auth. v State Div. of Human Rights*, 78 NY2d 207, *supra; Matter of Berenhaus v Ward*, 70 NY2d 436).

In any event, decency and justice call out for redress to this respondent. The award herein will not only compensate complainant for the mental distress he suffered but will also serve as a deterrent to others who might emulate petitioners' actions. An agenda of spite, malice and bias, acted upon over an extended period of time, resulting in the severe emotional and mental abuse of a tenant, seriously ill with AIDS, will not be met with half-hearted sanctions or "slaps on the wrist", and we concur in the award for mental anguish.

■ However, different standards must be used to assess the propriety of the sanction of $75,000 awarded as a civil penalty against the petitioners. The Administrative Law Judge properly found that "an unlawful discriminatory practice was the result of the [petitioners'] willful, wanton or malicious act" (Administrative Code § 8-126 [a] [eff Sept. 16, 1991]). That section of the Administrative Code also provides: "[T]he commission may, to vindicate the public interest, impose a civil penalty of not more than one hundred thousand dollars" (ibid.). The Administrative Law Judge recommended a penalty of $75,000 concluding that the only mitigating circumstance was the fact that there were no previous findings of discrimination against the petitioners.

The legislative history of the amendments to the Administrative Code, including the civil penalty provision, indicates that they were intended to strengthen and expand the enforcement mechanisms of the law so the Commission could prevent discrimination from playing any role in actions related to employment, public accommodations, housing and other real estate. In this case, the sizeable compensatory award rendered complainant for the mental anguish he sustained will, of course, deter others from imitating the actions of petitioners herein. With respect to the civil penalty which is payable to the City, we are not aware of reported cases reviewing the award of such penalties. However, we note that it is not intended to compensate the complainant but to punish the violator. Therefore, we apply a principle of proportionality since the Commission is precluded from assessing *more* than $100,000 as a civil penalty in *any* case. While petitioners do own 50 units, that is not in the upper range of units owned by large landlords in the City. Further, while their actions were egregious, committed over a period of time, and implicated other individuals besides complainant, the public interest was not affected to the much greater extent it would have been had petitioners been large landlords whose actions affected

hundreds, if not thousands, of individuals. Finally, as noted by the Administrative Law Judge, there were no previous findings of discrimination against petitioners. We determine therefore, that under the circumstances, a civil penalty of $25,000 would have been more appropriate.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Leland G. DeGrasse, J.), entered on June 22, 1994, which denied petitioners' application to annul and granted respondents' cross petition to enforce the decision and order of the New York City Commission on Human Rights, should be modified, on the law and facts, to reduce that portion of the determination which awarded $75,000 as a civil penalty against petitioners to an award of $25,000, and otherwise affirmed, without costs or disbursements.

WALLACH, J. P., KUPFERMAN, ROSS and TOM, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered on June 22, 1994, which denied petitioners' motion to annul and granted respondents' cross petition to enforce the decision and order of the New York City Commission on Human Rights, modified, on the law and facts, to reduce that portion of the determination which awarded $75,000 as a civil penalty against petitioners to an award of $25,000, and otherwise affirmed, without costs or disbursements.