[652 NYS2d 253]

DELTA AIR LINES, INC., Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.

In the Matter of SALVATORE ALESCI et al., Petitioners, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.

First Department, December 31, 1996

### APPEARANCES OF COUNSEL

*Stuart H. Bompey* of counsel, New York City *(Ira G. Rosenstein, Hunter R. Hughes, Benjamin A. Stone, Thomas J. Munger* and *Jay D. Milone* on the brief; *Orrick, Herrington & Sutcliffe,* New York City, *Rogers & Hardin,* Atlanta, Georgia, and *Delta Air Lines, Inc., Law Department,* attorneys), for Delta Airlines, Inc., petitioner.

*Thomas A. Holman* of counsel, New York City *(Goodkind Labaton Rudoff & Sucharow, L. L. P.,* and *Starr & Holman, L. L. P.,* attorneys), for individual petitioners in second proceeding and individual respondents in first proceeding.

### OPINION OF THE COURT

Tom, J.

In this appeal, we are called upon to determine whether respondent airline's use of weight standards in hiring flight attendants constitutes disability, age and/or gender discrimination; and whether the Federal Airline Deregulation Act (ADA) preempts petitioners' claims of discrimination.

### Factual Background

In the summer of 1991, Pan American Airways (Pan Am) filed for bankruptcy protection and, as a result, sought to sell certain assets, including its European and Asian routes. Pan Am and respondent Delta Airlines, Inc. (Delta) subsequently entered into an Asset Purchase Agreement (the Agreement) dated July 27, 1991, whereby Delta acquired a substantial

amount of Pan Am's assets. In addition, Delta agreed to hire approximately 6,000 Pan Am employees on the basis of specific criteria, including seniority, language proficiency, personal interviews, and satisfaction of the least restrictive of the Delta or Pan Am small to medium frame weight standards contained in Delta's height/weight chart.

Petitioners are all former flight attendants and pursers of Pan Am with at least 14 years of experience at the time Pan Am ceased operations. Petitioners Salvatore Alesci, Roberta Nina Brown, Hazel Lynn Grob, Genarina R. Kennan, Merlyn E. Lloyd, Margot Luedke, Francisca Martinez, Frank P. Pires, Catherine M. Semeniuk, and Michael F. Spilios contend that they were not hired by Delta due to a perceived disability, their weight. Delta, on the other hand, maintains that its height/weight standards are nondiscriminatory grooming standards. Petitioner Margot Luedke avers that she was not hired due to her age, disability and national origin, and Delta counters that she was offered a position, but turned it down in favor of a position with Pan Am. Petitioner Catherine Semeniuk asserts that she was not hired due to her age, disability, marital status and sex, to which Delta answers that she was not hired because she was not an active employee of Pan Am at the relevant time and, therefore, was not eligible for employment under the agreement.

## Procedural Background

Petitioners filed individual administrative complaints against Delta with the New York State Division of Human Rights (NYSDHR) in early 1992, alleging unlawful discrimination in violation of the Human Rights Law (Executive Law art 15). Following investigations of the allegations, the cases were calendared and heard by an Administrative Law Judge (ALJ), commencing on July 29, 1994. By recommended findings of fact, opinion, decision and order dated December 30, 1994, the ALJ found that petitioners' claims were not preempted by Federal law; that the petitioners were discriminated against on the basis of their age and/or their actual or perceived disability and/or their gender; that respondent's preemployment physical examination violated the Human Rights Law as well as the rights of the petitioners; that respondent's weight requirements and preemployment physical examinations were not bona fide occupational qualifications; and, that respondent had made unlawful inquiries of petitioners concerning, *inter alia*, their age, disability, marital status, gender, and/or

national origin; and recommended an award of back pay, damages for mental anguish and humiliation, and reinstatement.

A NYSDHR Executive Deputy Commissioner, by notice of order after hearing dated August 23, 1995, and the subsequent corrected notice of order after hearing dated September 18, 1995, rejected a majority of the ALJ's recommended findings of fact and conclusions. The Executive Deputy Commissioner found that petitioners' claims of discrimination based on their age and/or actual or perceived disability and/or marital status were preempted by the ADA and therefore were dismissed for lack of subject matter jurisdiction. The Executive Deputy Commissioner further rejected petitioners' claims of discrimination on the basis of race and/or national origin, found in favor of petitioners' claims based on gender, and found in favor of petitioners' claims of unlawful preemployment inquiry concerning petitioners' national origin and/or gender. The Executive Deputy Commissioner adopted the recommended award of back pay but significantly reduced the damages for mental anguish and humiliation.

The within CPLR article 78 proceedings were commenced on November 13, 1995. All of the parties concerned sought to have certain portions of the NYSDHR's September 18, 1995 order, which were contrary to their positions, set aside. By orders dated January 2 and 12, 1996, Justice Leland DeGrasse transferred the proceedings to this Court for disposition, pursuant to 22 NYCRR 202.57. Our findings follow.

## Scope of Review

An order of a Commissioner of the NYSDHR either must be supported by substantial evidence or set aside (*Matter of North Shore Univ. Hosp. v Rosa*, 86 NY2d 413, 419; *Citibank v New York State Div. of Human Rights*, 227 AD2d 322, 323). Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact * * * [it is] [m]ore than seeming or imaginary, it is less than a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180-181; *Matter of 119-121 E. 97th St. Corp. v New York City Commn. on Human Rights*, 220 AD2d 79, 81-82), and it exists when the proof is " 'so substantial that from it an inference of the existence of the fact found may be drawn reasonably' " (*Matter of Holland v Edwards*, 307 NY 38, 44, quoting *Matter of Stork Rest. v Boland*, 282 NY 256, 273). In those cases where

there is substantial evidence to support an administrative determination, a reviewing court cannot substitute its judgment in place of that of the Commissioner, even though an alternative determination may be reasonable and sustainable (*Matter of Consolidated Edison Co. v New York State Div. of Human Rights,* 77 NY2d 411, 417-418, *rearg denied* 78 NY2d 909; *Matter of Imperial Diner v State Human Rights Appeal Bd.,* 52 NY2d 72, 79; *Matter of Collins v Codd,* 38 NY2d 269; *Matter of 119-121 E. 97th St. Corp. v New York City Commn. on Human Rights, supra,* at 82).

## Preemption

■ The Executive Deputy Commissioner found that petitioners' claims of age, disability, or marital status discrimination were preempted because the protection afforded by the New York State Human Rights Law is broader than the protection provided by the ADA. Petitioners argue that their claims are not preempted because Congress, in enacting the Federal Airline Deregulation Act of 1978, was concerned not with the States' regulation of employment practices, but rather with the States' attempt to regulate airline fares and/or routes.

The ADA's preemption provision provides, in pertinent part: "[A] State [or] political subdivision may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier [having authority to] provide air transportation." (49 USC § 41713 [b].)

The purpose of the above provision was "[t]o ensure that the States would not undo federal deregulation with regulation of their own * * * [by] prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier" (*Morales v Trans World Airlines,* 504 US 374, 378-379). However, the preemption of State law by Federal statute is not favored absent persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained. As recently explained by the Court of Appeals: "[C]ongressional preemptive intent may be shown from express language in the Federal statute; it may also be established implicitly because the Federal legislation is so comprehensive in its scope that it is inferable that Congress wished fully to occupy the field of its subject matter ('field preemption'), or because State law conflicts with the Federal law. Implied conflict preemption may be found when it is impossible for one to act in compliance with both the Federal

and State laws, or when 'the state law * * * "stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" ' ". (*Guice v Charles Schwab & Co.,* 89 NY2d 31, 39, quoting *Barnett Bank v Nelson,* 517 US —, —, 116 S Ct 1103, 1108, quoting *Hines v Davidowitz,* 312 US 52, 67; *see also, City of New York v Job-Lot Pushcart,* 88 NY2d 163, 170).

In addition, the existence of an express. preemption clause does not entirely foreclose the possibility of the existence of an implied preemption, as an express and implied preemption can exist in the same statute (*Freightliner Corp. v Myrick,* 514 US 280, 289), and questions of preemption must be determined on a case-by-case basis in order to ascertain "whether the dangers and hardships of diverse regulation justify foreclosing a State from the exercise of its traditional powers" *(Colorado Commn. v Continental,* 372 US 714, 719; *see also, Hall v DeCuir,* 95 US 485).

In the matter before us, compliance with the State statute does not interfere with compliance with the Federal statute since there is no Federal standard for what constitutes discrimination against airline employees under the ADA, nor would a finding, either in favor of, or against Delta, frustrate the accomplishment and execution of the full purposes and objectives of Congress (*see, Hines v Davidowitz,* 312 US 52, 67, *supra*). Therefore, we conclude that the Executive Deputy Commissioner erred, as a matter of law, when he determined that the preemption doctrine applied.

Nonetheless, the determination of the NYSDHR dismissing petitioners' allegations of discrimination based upon a perceived or actual handicap, marital status, and age, as well as gender, should be confirmed.

### Petitioners' Claims that Delta's Weight Requirements Constitute Disability Discrimination

■ To establish a prima facie case of discrimination, petitioners must show that: (1) they were members of the protected class; (2) they were not hired; (3) they were qualified for the position; and (4) must either (a) show that they were replaced by a person who did not have their alleged disability; or (b) produce direct evidence of discriminatory conduct (*McDonnell Douglas Corp. v Green,* 411 US 792, 802; *Chertkova v Connecticut Gen. Life Ins. Co.,* 92 F3d 81, 87; *Citibank v New York State Div. of Human Rights,* 227 AD2d 322, *supra; see also, Mayer v*

*Manton Cork Corp.*, 126 AD2d 526; *Bockino v Metropolitan Transp. Auth.*, 224 AD2d 471). Once petitioners have made out a prima facie showing of discrimination, the burden shifts to respondent to produce evidence that petitioners were not hired based upon valid business reasons which were independent of discriminatory conditions (*Matter of Miller Brewing Co. v State Div. of Human Rights*, 66 NY2d 937; *Mayer v Manton Cork Corp., supra*).

Executive Law § 296 (1) (a) provides, in pertinent part, that: "It shall be an unlawful discriminatory practice * * * [f]or an employer * * * because of the * * * disability * * * of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual".

Executive Law § 292 (21) defines disability as: "(a) a physical mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held."

First, petitioners have failed to show that they are members of a protected class pursuant to the New York Human Rights Law. In this respect, petitioners do not claim, nor does the evidence support the position, that they suffer from a "medical impairment" which restricts their "normal bodily function" or is manifested in "medically accepted clinical or laboratory diagnostic techniques" as provided under the Executive Law *(ibid)*. Petitioners herein do not claim that their weight limited their actions or abilities.

In *State Div. of Human Rights v Xerox Corp.* (65 NY2d 213, 219), the Court of Appeals held that since the complainant's obese condition "was clinically diagnosed and found to render her medically unsuitable", it could constitute an impairment and, therefore, a disability within the meaning of the statute *(see, Underwood v Trans World Airlines,* 710 F Supp 78, 84). It is worthy of note that the complainant in *Xerox Corp.*, a computer programmer, was 5 feet, 6 inches tall and weighed 249 pounds, a condition which respondent's own physician diagnosed as "gross obesity", an abnormality *(supra,* at 216).

As noted by District Judge Leisure in *Trans World Airlines (supra,* at 84), the difference between "obesity" and being

"overweight" is not merely one of semantics. In the matter before us, petitioners do not allege conditions which amount to obesity and they fail to submit any proof that they have been clinically observed as having an "abnormal medical condition" (*supra*, at 84) or that they are medically incapable of meeting Delta's weight requirements due to an underlying medical problem. In conclusion, petitioners have failed to establish that they fall within a class of persons protected by the Human Rights Law and that Delta intended to discriminate against overweight women.

### Delta's Weight Requirements and Their Relationship To Petitioners' Age and Gender Discrimination Claims

■ Petitioners contend that they failed to meet Delta's weight guidelines because they have "large framed bodies" or because they are older and Delta's weight/height chart only includes weight expectations for small and medium framed women without concern for the individual's age, whereas older people are apt to be heavier. Therefore, petitioners conclude that Delta's weight requirements discriminate against women with large framed bodies, as well as older women.

Here, petitioners have failed to offer substantial proof buttressing their claims that age is a major factor in weight gain, that Delta's weight restrictions have had a disparate impact upon older employees, or that Delta has used its restrictions to avoid hiring older individuals. Indeed, Delta submits evidence which indicates that it relied heavily on seniority to employ flight attendants, and that its flight attendants average well over 40 years old.

■ Petitioners have also failed to demonstrate that Delta's use of weight standards constitutes sex discrimination. Under both New York and Federal law, it is established that employers are entitled to impose rules and regulations governing the appearance of their employees (*see, Matter of Page Airways v New York State Div. of Human Rights*, 39 NY2d 877; *Rogers v American Airlines*, 527 F Supp 229). In *Page Airways (supra*, at 878), the Court of Appeals stated that: "Although the prohibitions against discrimination in employment based on sex extend not only to hiring but to conditions and privileges of employment as well (Executive Law, § 290 *et seq.*), we do not believe that an employer unlawfully discriminates when he establishes a reasonable grooming policy which may be said to differentiate between male and female. Employers, particularly

those whose business involves contact with the public should be free to express and act upon a concern with the image which their employees communicate by their appearance and demeanor."

In the matter at bar, there is no evidence in the record that Delta intended to deprive one sex of equal opportunity or treatment, or that the weight requirements were somehow applied in a discriminatory manner. In fact, Delta has submitted evidence that approximately 90% of its flight attendants are female, thereby erasing petitioners' claim that the weight charts were somehow utilized to discriminate against women, insofar as no disparate impact toward females can be shown whatsoever. Therefore, petitioners' claim of sex discrimination fails.

■ With regard to petitioner Semeniuk's assertion that she was discriminated against due to a disability, specifically that she was afflicted by the Epstein-Barr virus, we disagree. The Agreement between Pan Am and Delta provided, *inter alia*, that any Pan Am employee who wished to be considered eligible to be hired by Delta must be ready, willing and able to return to work on or before November 1, 1991. Semeniuk, having been placed on long-term disability, was unable to return to work on or before November 1, 1991 and therefore did not fall within the terms of the Agreement. Semeniuk, therefore, was not hired due to a nondiscriminatory business reason.

### Delta's PreEmployment Inquiries

■ Lastly, petitioners maintain that always, without exception, it is unlawful to ask preemployment questions related to age, race, creed, color or national origin. However, it only is unlawful for an employer "to make any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color or national origin, sex, or disability or marital status, or any intent to make any such limitation" (Executive Law § 296 [1] [d]).

Thus, such inquiry alone is not discriminatory. Rather, to be actionable, the inquiry must express a " 'limitation, specification or discrimination' " (*Matter of New York Times Co. v City of N. Y. Commn. on Human Rights*, 41 NY2d 345, 349; *Alexander's, Inc. v White,* 115 AD2d 424, 426), and that "inference * * * must be a reasonable conclusion flowing logically from proven facts" (*Alexander's, Inc. v White, supra*, at 426).

In the matter at bar, the NYSDHR's findings that there was discriminatory intent must be vacated insofar as they are not

supported by substantial evidence. The record, when viewed as a whole, does not support a conclusion that the questions, either expressly or intentionally, led to petitioners not being hired. In fact, none of the interviewers recommended that any of the petitioners not be hired, and all of the petitioners received very good reviews, some of which can be classified as "glowing". As a result, the only reasonable inference which can be drawn is that petitioners were not hired due to their failure to meet Delta's weight guidelines, or, in the case of Semeniuk, due to her ineligibility under the Agreement.

With regard to petitioner Luedke, we find, as did the NYSDHR, that, in fact, she was offered a position with Delta, but turned it down, choosing instead to remain with Pan Am, apparently not anticipating its eventual total demise. Luedke's present assertions, that she turned down the Delta offer because she found it "vague", simply are insufficient to overturn the NYSDHR findings.

Accordingly, the determination of the NYSDHR dated September 18, 1995, insofar as it dismissed the claims of discrimination on the basis of disability by petitioners Alesci, Brown, Grob, Kennan, Lloyd, Luedke, Martinez, Pires, Semeniuk and Spilios, on the basis of age by petitioners Alesci, Brown, Grob, Kennan, Lloyd, Luedke, Martinez, Pires, Semeniuk and Spilios, on the basis of marital status by petitioners Alesci, Brown, Kennan, Martinez, Pires, Semeniuk and Spilios, on the basis of race by petitioner Brown, on the basis of sex by petitioners Alesci and Spilios, on the basis of national origin by petitioners Kennan, Luedke and Pires, and on the basis of sex by petitioner Semeniuk, should be confirmed, the individual petitioners' application denied, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Leland DeGrasse, J.], entered on or about January 12, 1996) dismissed, without costs; the determination insofar as it sustained claims of discrimination on the basis of national origin by petitioners Kennan, Luedke and Pires, and on the basis of sex by petitioners Brown, Grob, Kennan, Martinez and Semeniuk due to improper pre-employment inquiries, and on the basis of sex by petitioners Brown, Grob, Kennan and Martinez, and awarded these petitioners relief, including back pay and various amounts of damages for mental anguish and humiliation, should be annulled, the petition of Delta Air Lines should be granted to the extent indicated, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the

Supreme Court, New York County [Leland DeGrasse, J.], entered on or about January 2, 1996) should be disposed of accordingly, without costs.

MAZZARELLI, J. (dissenting in part and concurring in part). I agree with the majority that the Executive Deputy Commissioner committed errors of law to the extent that he found that Federal law preempts various claims at issue in these proceedings. However, as explained below, I dissent from those portions of the majority opinion which, in my view, disregard the substantial evidence of sex, age and disability discrimination committed by Delta Air Lines, Inc. (Delta).

These two Executive Law § 298 proceedings were transferred to this Court by order of the Supreme Court pursuant to CPLR 7804 (g) in order that we might determine whether the determination of the New York State Division of Human Rights (NYSDHR) was, "on the entire record, supported by substantial evidence" (CPLR 7803 [4]). Initially, it bears noting that because the legal question of preemption "could terminate the proceeding[s]" (CPLR 7804 [g]), the Supreme Court should have initially addressed whether the NYSDHR's determination "was affected by an error of law" (CPLR 7803 [3]) and should have "transferred" only to the extent that Delta's preemption argument lacked merit. Nevertheless, the record before us adequately presents both the legal and factual arguments of the various parties, and provides a sufficient basis for our review.

The individual petitioners are all former flight attendants and pursers of Pan American World Airways, Inc. (Pan Am). They were all long-term Pan Am employees who had worked for at least 14 years or more at the time Pan Am ceased operating in December 1991. In August 1991, these individuals were interviewed for positions with Delta for placement at Delta's New York base at John F. Kennedy International Airport pursuant to an asset purchase agreement between Delta and Pan Am. The agreement provided that Delta would hire thousands of Pan Am employees based on certain criteria, including: seniority; language proficiency; personal interview; and satisfaction of the least restrictive of either the Delta or Pan Am small to medium frame weight standards contained on a height/weight chart. After these interviews were conducted, which included a medical examination, seven of the individual petitioners were found by Delta to satisfy all requirements

except the weight standard.* Two others met Delta's weight standards; Ms. Luedke was offered Delta employment, but declined to accept it, choosing to remain a Pan Am employee; Ms. Semeniuk was not offered a position, according to Delta, because she was not an eligible "active employee" at the time of the asset purchase.

My disagreement with the majority stems not from its preemption analysis, nor even from its view of most of the claims pressed by the individual petitioners. Where I part company with my brothers is in their view that Delta's weight charts constitute a nondiscriminatory grooming standard under the circumstances of this case. It should be made clear at the outset that in no case was a disqualified applicant considered so overweight that her or his ability to carry out safely the tasks of being a flight attendant or purser was somehow jeopardized. Reduced to its core, Delta's argument is that its weight charts enable it to ensure "a professional, attractive, uniformed appearance." In other words, Delta's decision not to hire these petitioners solely for being a few pounds overweight according to what is, at best, an arbitrary weight chart based on subjective views on how much women should weigh in relation to men, is, in the majority's view, perfectly legal. This, however, is not the law in New York. Rather, in my view, the petitioners clearly established that the charts were used in a manner that was discriminatory under New York's Human Rights Law. If the majority is correct that this is the law, it should not be. The Court should not sanction the use of what may appear to be neutral criteria but really are no more than a mask for irrational prejudices about how members of one sex should appear. Accordingly, I dissent.

First, it should be observed that Delta's attempt to achieve an "attractive, uniformed appearance" based on weight charts is flawed at the outset. As was amply demonstrated at trial by the unrebutted expert testimony, different individuals weighing the same might, due to muscle and fat ratios, and to differing body frames, have completely different appearances. Moreover, as the expert explained, because of various phenomena, such as edema, body weight can fluctuate several pounds within the same day, let alone within days. Clearly, Delta's allegedly neutral criteria cannot not achieve their stated goal. Indeed, at the time of trial, Delta had already placed an indefinite moratorium on the use of its weight charts.

---

* Petitioners Brown, Grob, Kennan, Lloyd, Martinez, Pires and Spilios.

A public hearing was commenced on July 29, 1994 and continued until August 11, 1994 before the then-Chief Administrative Law Judge (Chief ALJ). By recommended findings of fact, opinion, decision and order dated December 30, 1994, the Chief ALJ found that petitioners' claims were not preempted by Federal law; that the petitioners were discriminated against on the basis of their age or their actual or perceived disability and/or their gender; that respondent's preemployment physical examination violated the Human Rights Law as well as the rights of the petitioners; that respondent's weight charts and preemployment physical examinations were not bona fide occupational qualifications; and that respondent had made unlawful inquiries of petitioners concerning such things as their age, disability, marital status, gender, or national origin, and recommended an award of back pay, damages for mental anguish and humiliation, and instatement with Delta.

The Executive Deputy Commissioner, by notice of order after hearing dated August 23, 1995 and by subsequent corrected notice of order after hearing dated September 18, 1995, rejected a majority of the Chief ALJ's recommended findings of fact and conclusions. The Executive Deputy Commissioner concluded that petitioners' claims of discrimination on the basis of their age or actual or perceived disability or marital status were preempted by the Federal Airline Deregulations Act (ADA). He further rejected petitioners' claims of discrimination on the basis of race and/or national origin, found in favor of petitioners' claims of discrimination on the basis of gender, and found in favor of petitioners' claims of unlawful preemployment inquiry concerning petitioners' national origin or gender. The Executive Deputy Commissioner adopted the recommended award of back pay but significantly reduced the damages for mental anguish and humiliation. It is this order which is reviewed in these proceedings.

In my view, the majority correctly finds that the ADA has as its principal purpose the prevention of State regulation of airline rates and routes in the face of Federal deregulation. I agree, therefore, that nothing in the ADA can be fairly read as preempting this State's laws against discrimination in employment. Thus, while challenged determinations of the Executive Deputy Commissioner based on substantial evidence should not be set aside too readily, to the extent that the Executive Deputy Commissioner erroneously concluded that the Human Rights Law is preempted by the ADA, and therefore dismissed certain claims, this is an error of law.

Although some of the findings of discrimination made by the Chief ALJ, which were then overturned by the Executive Deputy Commissioner, could arguably have been reached on this record on their merits, "this Court will not substitute its judgment for that of the Commissioner" even if "a contrary decision may arguably be reasonable" *(Ebasco Servs. v New York State Div. of Human Rights,* 234 AD2d 80, 81). Similarly, the findings of discrimination which the Executive Deputy Commissioner did uphold should not be lightly cast aside. In rejecting the determinations of discrimination by the Executive Deputy Commissioner, the majority substitutes its judgment for that of the factfinder and for that of the Chief ALJ and Deputy Commissioner, whose expertise includes ferreting out and remedying illegal employment discrimination.

Turning then, to the areas of disagreement with the majority, I begin with the observation that the New York Human Rights Law states, in pertinent part, that: "It shall be an unlawful discriminatory practice * * * [f]or an employer * * * because of * * * disability * * * to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual" (Executive Law § 296 [1] [a]). A disability has been defined to include physical, mental, or medical impairments resulting from anatomical, physiological, or neurological conditions, including being overweight *(State Div. of Human Rights v Xerox Corp.,* 65 NY2d 213; Executive Law § 292 [21]). As the Court of Appeals explained, "We have found nothing in the statute or its legislative history indicating a legislative intent to permit employers to refuse to hire persons who are able to do the job simply because they have a possibly treatable condition of excessive weight." *(State Div. of Human Rights v Xerox Corp., supra,* at 220.) Thus, the record here clearly established a prima facie case of discrimination based on perceived or actual disability.

In addition, Delta's weight charts were, as the record bears out, nothing more than a pretext for age and sex discrimination. The expert testimony at the hearing explained what anyone with life experience knows, that as one passes from one decade to the next, one is apt to be heavier. The failure of the weight charts to adequately account for age as a substantial factor in weight gain means that what appears on its face to be an age-neutral criterion is a pretext for illegal age discrimination. Moreover, while, as the majority points out, the use of separate weight charts for men and women has been upheld,

here the weight restrictions were not applied in a nondiscriminatory manner. In my view, the record, taken in its voluminous entirety, substantially establishes that Delta discriminated against women, and more particularly, older women. Thus, the Executive Deputy Commissioner's order should be confirmed in part and annulled in part to the extent it is inconsistent with this reading of the record with respect to the various petitioners' claims of discrimination based upon a perceived or actual disability, sex, and age (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176). Moreover, the damages awards ordered by the Executive Deputy Commissioner are substantially based on the expert testimony adduced at trial and should be confirmed.

Accordingly, I dissent to the extent indicated.

KUPFERMAN and NARDELLI, JJ., concur with TOM, J.; ROSENBERGER, J. P., and MAZZARELLI, J., dissent in part and concur in part in a separate opinion by MAZZARELLI, J.

Determination of the New York State Division of Human Rights, dated September 18, 1995, insofar as it dismissed certain claims of discrimination, confirmed, the individual petitioners' application denied, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County, entered on or about January 12, 1996) dismissed, without costs; the determination insofar as it sustained certain other claims of discrimination on the basis of national origin and sex, and awarded certain petitioners relief, including back pay and various amounts of damages for mental anguish and humiliation, annulled, the petition of Delta Air Lines granted to the extent indicated in this Court's opinion and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County, entered on or about January 2, 1996) disposed of accordingly, without costs.