128 F.3d 77
 74 Fair Empl.Prac.Cas. (BNA) 1849,
73 Empl. Prac. Dec. P 45,289
Mark ABDU-BRISSON; Ronald H. Buchner; Gordon Burgess;
Robert Burke; Thomas D. Callahan; Thomas F. Carey; Dale
E. Carman; Louis Carrara; T. Barry Casey; Lamar Cason;
Robert T. Cassidy; Robert Changery; Larry E. Chappel;
Richard Charbonneau; Stanley Checkoway; Douglas S.
Christensen; Lee J. Church; James Cirilli; Robert Clack;
Walter M. Clark; Philip Claudy; Harold T. Cleaver;
Charles Clements; Richard T. Clough; Lawrence D. Cobb;
Wesley Collins; Ronald E. Combee; Eugene M. Comfort;
Harry G. Compton; John C. Cook; Clifford Cool; David L.
Cooper; Donald C. Cory; Marcus Covington; Eugene Cox;
Lynn Cox; Lynn O. Cox; Howard Crowell; J.N. Crump;
Charles Crumpton; Joseph C. Cushing; Edward Cywinski;
Thomas G. Dahoney; Joseph Dalton; Charles R. Davis;
Gerald E. Davis; Wade L. Davis; Thomas A. Dean; Ernest E.
Dell, Jr.; Thomas J. Delnickas; Henry P. Denoncour;
Robert Devries; Clarence J. Dieter; Charles Dike, Jr.;
Gerald Dion; Jack Ditzel; Stephen A. Dodge; William W.
Donnelly; Wilfredo H. Dorna; William Dorna; Charles B.
Douglas; Robert H. Drozd; Vincent L. Duffy; Ralph Dunn;
Richard C. Dupuis; Robert Durant; Patrick W. Dwyer;
Robert R. Dzimidas; Robert Ebbler; Jack E. Eldred;
Kenneth Elias; William C. Ellis; Danny A. Endresen; Lewis
W. English; R. Robert English; Sigurd Eriksen; John M.
Esposito; Douglas S. Eyre; Douglas L. Ezell; John R.
Fahy; Jeffrey Fairbrother; Andral P. Faris; Robert
Ferrel; Lewis Fielack; Jerry D. Fifer; James Flaugh;
Eugene Foret; Richard Forte; Duane Foster; Francis J.
Foster; David Fountain; George V. Fox; Roland M. Fraga;
Robert A. Fraser; Bruce L. Frye; John Fucik; Paul J.
Fuller; Edward R. Fullerton; John Gallagher; Rodger P.
Galli; Frederick C. Gardner; Charles L. Garner; Edwin J.
Gieger; James T. Gettys; Frank H. Gibson; John Grout;
Robert P. Gunst; William Halvosa, III; D.B. Haman; Lloyd
Hamilton; Ross M. Hamilton; Roberto Hanchett; Michael D.
Hanley; Alvin C. Hanson; Robert Harlan; Gary Harmon;
Gary L. Harris; Robert S. Harris; Dan H. Harrison; Nile
L. Harter; Joseph Haselby; William Herndon; Donald C.
Hertzfeldt; Larry Hess; Lon Hicks; Carl E. Hindle;
Richard Hohlowski; Frederick W. Holtgrave; Daniel E. Hood;
William N. Hoover; Michael R. Hopkins; Darryl G. Hubbard;
John E. Hubbard; Stanley C. Huie; Arnold Husemann; O.H.
Hutchins; Rayford Hymes; John Iisager; Andrew C. Isola;
A. Allen Jackson; David H. Jenkins; William K. Jillson;
James C. Johnson; Robert Johnson; Ronald W. Johnson;
Terrill C. Johnson; J.J. Jones; M. Perry Jones; Terrell
Jones; Dean Jung; Herman T. Kamerman; H.L. Karasoff;
William G. Karns; Gary R. Kasper; Patrick T. Kavanagh;
Ralph B. Abrames; Delbert R. Ackley; George Adalian; John
R. Adkins; Steven A. Aigner; James Ainsworth; David R.
Albert; William Allen; Charles Amacker; Joseph Anderson;
Joseph Anding; Wilbert Z. Antill; Eric Archer; Stuart H.
Archer; Joseph A. Armstrong; Leonard R. Atlas; George J.
Avery; Chester Bailey; Larry Baker; John M. Bandy;
Richard Barker; Mohammad Bashir; Peter P. Bendzlowicz;
Joseph J. Bennett; Peter Bennett; William O. Bennett;
David Benson; Thomas R. Bentley; Michael Berry; James
Bethel; Robert Beziat; Gordon M. Biggar; Stephen Blank;
David Bloss; James Bloyder; Charles J. Bonini; Marc L.
Bornn; Walter Bosselman; Steven D. Bowden; Ned C. Bowers;
James W. Bowles; Gary W. Brandt; Stephen W. Brandt;
Curtis H. Briggs; Donald Brodheur; Stephen A. Brodhecker;
Alwyn Brown; Robert Brown; James Browne; Robert P. Gick;
Donald R. Giddens; Joseph A. Giddings; Bernard D. Hgiere;
Norman Girouard; Charles F. Gladish; Thomas E. Gompf;
Jack D. Gordon; Corad Conrad Gosheff; Alton G. Graham;
Ritchie L. Griffith; Kenneth R. Gross; Paul Frederick
Johnson; David Kawamoto, Kevin P. Kehoe; Richard D. Kelly;
Greg Kerhulisl; H.W. King; Christopher Kipfer; David R.
Kirschner; Roger L. Klein; William Kline; Richard
Klinicki; Stephen M. Korcheck; John Kuhs; William Kunz;
Enrigue J. Lanz; Leland T. Larson; Richard Laumeyer;
Warner F. Lee; Albert Leet; Frank M. Lenz; Ira Leshin;
John W. Lewis; Edward R. Lindgren; B.L. Lindsay; William
H. Linkroum, III; Gordon M. Littlefield; David Loomis;
Frederick Losen; James V. Loven; Daniel W. Lovett; Edward
J. Lynch; M. Lyon; Richard Mack; Michael Macquarrie;
Dennis Maddux; Edward A. Maiellaro; Robert Manske; Sidney
S. Margrey; Anthony Marmon; Frank Martin; Roderick
Martindale; John H. Mascali; Robert J. Massey; Robert
Paul Massi; Michael M. Matei; Brian P. Mattiesen; Richard
Mayer; Dale Q. Mayo; Thomas Mays; Benedict L. McAlevey;
Guy L. McCafferty; Patrick McCallum; Jim M. McConnell;
Robert B. McEachran; James McFarlane; William McInroe;
Edward A. McKay; Kenneth R. McKee; Hudnalle McLean;
Michael T. McQuillen; Christopher L. Mega; R. Merrill;
Lawrence E. Meyer; James W. Michel; Gordon Miller;
Gregory Miller; Joseph P. Miller; Richard L. Mitts; Einar
J. Mogensen; William J. Mooney; James Moore; Mark Moore;
Robert L. Morey; Peter J. Moriarty; J. Edwin Morse;
Gordon S. Moyer; Hay Muffett; Charles F. Mulin; Richard
Muller; John Neill; Jack A. Nelson; Jeffrey S. Nelson;
Larry Nelson; Leonard M. Nelson; Van Nelson; Jackson I.
Newberry; Vernon J. Nordman; Yan Novak; John M. Nunez;
James R. Nuss; Robert Ober; Stuart A. O'Brien; Charles W.
O'Connor; Michael O'Donnell; Kenneth Olson; Laurence H.
Omura; Clyde Orr; John F. O'Ryan; Robert L. Osburn; Lane
Overstreet; Robert B. Owen; Capt. Dennis A. Panzer; Henry
Papa; Theodore Pateas; John C. Patten; Bruce Patzmann;
Richard V. Paul; Frederick Pearce; Paul Pearce; Robert A.
Penn; Richard A. Perkins; Capt. T.C. Pestolis; Stephen T.
Petersen; David H. Peterson; Robert Peterson; Kenneth M.
Pfrang; James Larry Phillips; William Picken; P.A.
Pierce; Richard Pipkin; Vincent Pischl; Curtis R. Platte;
Richard P. Platts; Dwight Plyler; Jimmie R. Pollock;
John T. Pool; John C. Popkess; Randal L. Porter;
Frederick R. Pouy; John R. Ramey; Norman W. Reagan; John
H. Reeves; Michael Reichfeld; Arnold Reiner; Forrest
Rhodes; Harold W. Rhodes; Henry H. Rhyne; William L.
Rice; James Richards; Henry Richardson; John B.
Riederich; Robert Rigney; Randolph Rime; James David
Roach; James N. Robertson; Richard P. Robinette; Jack
Rocchio; Robert Rognlien; William C. Rose; Edmond
Rousseau; John Rudl; Kenneth B. Ruhm; Terry Rush; Philip
M. Ruth; Robert F. Sabbatino; Salvatore Sallibello; Kit
Sanders; Anthony R. Saporito; James P. Sasserl; Frank
Savino; P. Sayers; Francis E. Schlater; Jerry Schnell;
Donald J. Scholtz; Paul W. Scholz; Harry Schoning; Allen
Schwab; James G. Schwalbert; Carl D. Scrivener; Laurence
E. Senn; Ralph M. Shape; Jimmy R. Shaw; Michael Shea;
George Sheasley; T.B. Sheehan; Jay F. Shinn; Jimmy H.
Shuman; David M. Simpler; D.B. Siotkas; John Skinner;
John E. Skomars; Kenneth Slobody; Robert R. Smedley;
James Smiley; B. Stan Smith; Calvin Smith; Don P. Smith;
Wayne A. Soliday; Richard Somoya; James F. Sonnhalter;
Edward W. Speirs; Charles C. Spencer; Leon Spinney; Terry
J. Spring; Robert G. Stalvey; Kenneth J. Steffan; Leonard
A. Stiller; Thomas J. Stone; Whitney Strain; James
Stuart; Donald R. Stubbs; Robert Sturgeon; Jimmy L.
Talkington; Charles Tarpley; James R. Taylor; H.J.
Tedesco; Paul T. Thatcher; Jack Thomas; John M. Thomas;
Brenda A. Thompson; George F. Thompson; Thomas H. Tingle;
Emmett R. Titshaw; Henry Tooke; William W. Travis;
Anthony Tripoli; Jerry Trott; James Vandemark; S.B.
Vangorder; Thomas Vannote; Wayne A. Veeneman; Rafel E.
Velez; James A. Verschage; David M. Viken; James S.
Vitale; Lloyd S. Voogt; Robert Voss; Bruce A. Wadiak;
James Waeber; Neal Waldron; Joseph R. Walker; David E.B.
Ward; Daniel Watrous; Ronald Weaver; Randol B. Webb;
Brian Weisblat; Larry J. Welch; Peter J. Wenk; Donald
W. Wetmore; Curt J. Wetzel; Austin Whelihan; Jack L.
Whicker; James H. White; R.O. White; William O. White;
J.B. Williams; C.R. Williams; J.A. Wills; Donald L.
Wilson; James R. Wiltjer; John Stephen Woelfel; Leonard
R. Wohletz; Mark M. Wohlmuth; Clifton Woodworth; Donald
E. Wright; F.E. Wright; Rufus Yarbrough; David Yarri;
James York; Gordon Young; Otis B. Young; Wayne Young;
Forrest Zetterberg; Ronald J. Zimmerman; James Zurcher and
Pan Am Pilots John Does 489 through 700, Plaintiffs-Appellants,
v.
DELTA AIR LINES, INC., Defendant-Appellee.
 No. 1144, Docket 96-7721.
 United States Court of Appeals,
Second Circuit.
 Argued March 6, 1997.
Decided Oct. 15, 1997.
 
 Edward J.M. Little, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, for Appellants
 Stuart H. Bompey, Orrick, Herrington & Sutcliffe, for Appellee.
 Before: WALKER, McLAUGHLIN, and WOOD, JR.,* Circuit Judges.
 HARLINGTON WOOD, JR., Circuit Judge.
 
 
 1
 Plaintiffs-appellants are 488 former pilots of Pan American World Airways ("Pan Am") hired in 1991 either as captains or first officers by defendant Delta Air Lines at the time of Pan Am's bankruptcy. As a part of a bankruptcy transaction Delta also acquired certain of Pan Am's routes, aircraft, and other employees not involved in this litigation.
 
 
 2
 The problem at the heart of this case arises because plaintiffs, Pan Am's pilots, are generally older than Delta's pilots with whom plaintiffs had to be integrated. To effect the pilot assimilation the Air Line Pilots Association International and Delta entered into a supplemental collective bargaining agreement. Plaintiffs now claim that three of the terms of their Delta employment violate New York city and New York state law. Those employment terms relate to seniority rights, post-retirement medical benefits, and salaries.
 
 
 3
 Plaintiffs filed their complaint in the New York State Supreme Court in 1994 asserting claims under the New York State Human Rights Law ("State HRL"), New York Exec. Law § 296 (McKinney 1993), and the New York City Human Rights Law ("City HRL"), N.Y. City Adminis. Code §§ 8-107(1)(a) and (c) 8-107(17). Specifically, the plaintiffs claim that Delta illegally discriminated and continues to discriminate against them in the terms of their employment on the basis of age, resulting from the manner the plaintiffs were integrated into Delta's pilot seniority list. The plaintiffs also complain of the imposition of a ten-year service requirement before they can become eligible for full company-paid post-retirement medical benefits, and lastly, plaintiffs complain of the imposition of a three-year period before they can reach pay parity with Delta's other pilots.
 
 
 4
 Delta removed the case from the state court to the district court on the basis that the plaintiffs' cause of action arose under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., because plaintiffs were seeking to modify the medical benefits plan. Delta in its answer also raised the defense of preemption under the Railway Labor Act, 45 U.S.C. § 151 et. seq. ("RLA").
 
 
 5
 Following discovery Delta moved to dismiss pursuant to Fed.R.Civ.P. 12, or, alternatively, for summary judgment under Fed.R.Civ.P. 56. In its motion to dismiss Delta argued that the state and city HRLs did not apply to plaintiffs' claims, that the Airline Deregulation Act ("ADA") preempted the plaintiffs' claims, and that ERISA preempted the post-retirement medical benefits claims. In a second motion to dismiss Delta argued that the RLA preempted plaintiffs' claims. In general, Delta argued that the plaintiffs' suit was an attempt to use the city and state HRLs to dictate the economic terms of Delta's purchase of the Pan Am assets, which must fail because there is a direct relationship between the relief sought and Delta's prices, routes, or services, a relationship prohibited by the ADA.
 
 
 6
 The district court granted Delta's motion to dismiss only on the ground that the ADA preempted plaintiffs' age discrimination claims.[1] The district court did not address Delta's additional arguments on the motion to dismiss, its summary judgment motion or the RLA preemption issues. Delta's motion invoked the ADA's preemption provision which prohibits enforcement of any state or local law which relates to the "price, route or service of an air carrier."[2] 49 U.S.C. § 41713(b)(1) (1996).
 
 
 7
 Our review of legal conclusions is de novo and for clear error as to any factual findings. In re Vogel Van & Storage, Inc., 59 F.3d 9, 11 (2nd Cir.1995).
 
 ANALYSIS
 
 8
 The congressional authority to provide for preemption of state law is based on the Supremacy Clause of Article VI of the Constitution. Based on that authority, the ADA preempts claims arising under state and city statutes which relate to a "price, route or service." 49 U.S.C. § 41713(b)(1) (1996). That standard can be simply stated, but its practical application in particular circumstances is difficult, as this case amply illustrates. The Supreme Court has not drawn any distinct preemption lines for guidance, and that may not be possible.
 
 
 9
 In Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992), the Supreme Court did explain that a state law is "related to" airline routes or services if it has "a connection with or reference to airline 'rates, routes, or services.' " Had the court stopped there preemption would have a very broad sweep. However, the court went on to note that "[s]ome state actions may affect [air line fares] in too tenuous, remote, or peripheral a manner" to have a preemptive effect. Morales, 504 U.S. at 390, 112 S.Ct. at 2040 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)); see also American Airlines, Inc. v. Wolens, 513 U.S. 219, 224, 115 S.Ct. 817, 821-22, 130 L.Ed.2d 715 (1995) (reaffirming the preemption escape hatch set forth in Morales ). Therefore, if a state provision is "too tenuous, remote, or peripheral" to have an effect on "price, route or service," the ADA does not preempt that provision. The question in this case is whether the New York state and local laws fit this description.
 
 A. Decision Below
 
 10
 In dismissing the complaint on the basis that the ADA preempted plaintiffs' state law claims, the district court read Morales and Wolens to formulate a two-part test. 927 F.Supp. at 111. Under the first part of the test, the plaintiffs' claims must involve the enforcement of a state law. Under the second part, the state law must have a connection with or relation to airline prices, routes, or services. Plaintiffs acknowledge that Morales and Wolens define a two-part test for analyzing ADA preemption issues, but plaintiffs challenge the district court's application of the second part of the test.
 
 
 11
 Delta argued that any change in the ten-year service requirement for full post-retirement medical benefits and plaintiffs' pay scale would have a direct economic impact on Delta's prices and, thus, would relate to Delta's prices. 927 F.Supp. at 111. Plaintiffs, however, argued that any supposed effect on Delta's prices would be too insignificant to take into account. Id. Plaintiffs further argued that Delta could easily absorb the limited number of plaintiffs into its pilot group without the necessity of passing on any added costs to the public. Id.
 
 
 12
 The district court saw the issue not as whether the state laws would have a significant effect on price, but whether the state laws would interfere with the congressional scheme of airline deregulation intended to promote competition so as to achieve "efficiency, innovation and low prices."[3] Id. at 111-12. The district court reached this conclusion on the basis of the sound assumption that the states could not be permitted to undo federal deregulation with their own regulations. The district court therefore determined that it was the potential impact of state law that had to be considered, not any actual liability exposure. Id. at 112. Otherwise, the district court observed, it would inappropriately involve itself in the merits of the case, not just the initial preemption issue. Id. Having found that the plaintiffs "essentially concede[d] the logic of Delta's argument," id. at 111, the district court accepted Delta's position that the medical benefit and pay scale provisions of plaintiffs' employment sufficiently related to price and that claims concerning those provisions were therefore necessarily preempted. Id. at 112.
 
 
 13
 The district court also considered the effect the resulting pilot personnel changes might have on "services." In the district court's judgment, it had to determine whether or not pilot staffing was "related to" Delta's "services," rather than what the actual effect on Delta's services would be. Id. The district court in interpreting "services" relied on Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir.1995) (en banc), which defined "services" as the "[e]lements of the air carrier service bargain include items such as ticketing, boarding procedures, provisions of food and drinks and baggage handling, in addition to the transportation itself." Delta argued that the changes in pilot staffing would cause turmoil among Delta's pilots, disrupting flight deck relationships and thereby affecting Delta's transportation services. 927 F.Supp. at 112. Plaintiffs argued that Delta made an insufficient showing that changes in the order of the seniority list would result in turmoil on the flight deck, thereby disrupting flight deck relationships to the extent that "services" would suffer. However, the court adopted Delta's argument and found that the plaintiffs' claims would impact transportation itself, not the usual ticketing, boarding procedures, and that therefore claims regarding the seniority list related to services and were preempted. Id.
 
 
 14
 The district court's approach and analysis is not unreasonable considering the difficulties inherent in applying the imprecise ADA preemption standard. However, in light of the Supreme Court's recent narrowing of ERISA's preemption provision, the district court's approach would sweep too many state regulatory statutes under the rug of ADA preemption. Therefore, we cannot accept the district court's approach as applied.
 
 B. Supreme Court Preemption Jurisprudence
 
 15
 The "related to" language of the ADA provides neither a predictable nor practical formula for distinguishing preempted from non-preempted state and local laws, and the Supreme Court has provided little guidance as to the meaning of "related to" after Morales and Wolens. However, because the language in the ADA's preemption clause is similar to the language in ERISA's preemption clause, the Supreme Court in Morales adopted the same standard. Thus, we may look to ERISA cases for guidance.
 
 
 16
 The Supreme Court in addressing the preemption provisions of ERISA has been limiting preemption's reach.[4] "Related to" appears to be developing, to some degree, to mean whether state law actually "interferes" with the purposes of the federal statute, in this case airline deregulation. See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 1676-77, 131 L.Ed.2d 695 (1995); see also Boggs v. Boggs, --- U.S. ----, ----, 117 S.Ct. 1754, 1760, 138 L.Ed.2d 45 (1997) ("We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects."); Burgio and Campofelice, Inc. v. New York State Dept. of Labor, 107 F.3d 1000, 1008 (2d Cir.1997). For example, in Travelers, 514 U.S. at 655, 115 S.Ct. at 1676-77, the Court noted that the literal text of ERISA was "clearly expansive," but for practical purposes the statute had to be read more restrictively lest its reach stop nowhere. The Court found that the "related to" language in ERISA's preemption clause did not modify the presumption that Congress did not intend to supplant state law. 514 U.S. at 654, 115 S.Ct. at 1676. Thus, the Court began its analysis with the assumption that "the historic police powers were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 655, 115 S.Ct. at 1676 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The Court conceded that its prior attempts to draw a preemption line were not always helpful, id. at 655, 115 S.Ct. at 1676-77, and that ERISA's text also is unhelpful in determining congressional intent. Thus, the Court explained that it must "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Id. at 656, 115 S.Ct. at 1677.
 
 
 17
 In another preemption case recently decided in the ERISA context the Supreme Court in DeBuono v. NYSA-ILA Medical and Clinical Serv., --- U.S. ----, ----, 117 S.Ct. 1747, 1753, 138 L.Ed.2d 21 (1997), found no preemption in a majority opinion written by Justice Stevens, and reversed. The Court explained that the court of appeals in holding otherwise, had relied substantially on a too expansive and too liberal interpretation of "relate to." Id. at ----, 117 S.Ct. at 1751. It faulted the appellate court "for failing to give proper weight to Travelers rejection of a strictly literal reading" of that statute and reiterated the presumption against preemption. Id. Because the challenged state law concerned health and safety, an area traditionally regulated by the states pursuant to their police powers, the Court explained that the party arguing in favor of preemption "[bore] a considerable burden of overcoming 'the starting presumption that Congress did not intend to supplant state law.' " Id. at ----, 117 S.Ct. at 1752 (quoting Travelers, 514 U.S. at 654, 115 S.Ct. at 1676). Delta, therefore, would seem to bear the burden of overcoming the initial presumption against preemption by establishing that enforcing the state and city laws would frustrate the purpose of the ADA. See Travelers, 514 U.S. at 654, 115 S.Ct. at 1676 ("we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law"); Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (The court's "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole."). In fact, lower courts considering whether the ADA preempts a state claim have required the airlines to meet this burden, and several have found that they fail to do so. We begin with Delta's assertion that the plaintiffs' pay parity claims and benefits claims are preempted because they relate to airline prices.
 
 C. Preemption Based of Affect on Price
 
 18
 In Ruggiero v. AMR Corp., No. C 94-20160 JW, 1995 WL 549010, * 7-9 (N.D.Cal. Sept. 12, 1995), the district court ruled against preemption of the plaintiff's retaliatory discharge claims because the airline put forth no evidence that the plaintiff's claims would frustrate the purposes of the ADA. In addition to citing this lack of evidence, the court also found the plaintiff's retaliatory discharge claims distinguishable from claims for discrimination based on physical characteristics which other courts had held were preempted because Federal Aviation Administration regulations promulgated under the ADA prescribed physical requirements for pilots but did not regulate wrongful termination. Id. at * 8.
 
 
 19
 Likewise, in Anderson v. American Airlines, Inc., 2 F.3d 590, 597 (5th Cir.1993), the Fifth Circuit ruled against preemption of a claim for monetary damages under a state retaliatory discharge statute. Although the case came before the Fifth Circuit on an appeal from a order denying remand, to resolve the appeal, the Anderson court had to determine whether a state's retaliatory discharge statute related to airline services in the context of a mechanic's claim that the airline discharged him in retaliation for filing a workers compensation claim. Id. In reaching its holding, the court noted that Congress passed the ADA to deregulate the airline industry and that the ADA authorized the Department of Transportation to establish rules and regulations to promote civil aircraft safety. Id. Thus, the court explained that a claim for monetary relief resulting from a retaliatory discharge would have too remote an effect on services to be preempted, while a claim for reinstatement may have a significant enough effect on services to be preempted under the ADA because the regulations promulgated under the ADA establish the minimum requirements for the certification of airline mechanics. Id.
 
 
 20
 Most notably, the New York appellate court recently upheld several age discrimination and disability and marital status discrimination claims filed by Pan Am flight attendants who became Delta employees as the result of the same transaction as the one at the heart of this case. Delta Air Lines, Inc. v. New York State Div. of Human Rights, 229 A.D.2d 132, 652 N.Y.S.2d 253, 257-258 (N.Y.App.Div.1996), leave to appeal granted, 657 N.Y.S.2d 891 (N.Y.App.Div.1997). In reaching its holding the court noted that preemption is not favored absent "persuasive reasons" that either the nature of the subject matter of the state regulation requires preemption or Congress has expressly prescribed preemption, id. 652 N.Y.S.2d at 257, and that preemption must be determined on a case-by-case basis, ascertaining whether "the dangers and hardships of diverse regulation justify foreclosing a State from the exercise of its traditional powers." Id. 652 N.Y.S.2d at 257-58 (quoting Colorado Anti-Discrimination Comm. v. Continental Air Lines, 372 U.S. 714, 719, 83 S.Ct. 1022, 1024-25, 10 L.Ed.2d 84 (1963)). The court reasoned that because compliance with the city and state human rights laws would not interfere with the airline's ability to comply with the ADA, because the ADA did not prescribe what constituted discrimination against airline employees and because a finding either for or against the airline would not frustrate the purpose of the ADA, the ADA did not preempt the plaintiffs' claims. Id. 652 N.Y.S.2d at 258. The same might be said in this instance.
 
 
 21
 Most central to this analysis, Delta is unable to establish that enforcing the city and state human rights laws in this case would frustrate the purpose of the ADA. See Gade, 505 U.S. at 98, 112 S.Ct. at 2383. Although the policies behind the ADA are several, the primary motivation for the reform--as the name of the statute indicates--was to deregulate the industry. The ADA was based on a Congressional assumption that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services'...." Morales, 504 U.S. at 378, 112 S.Ct. at 2033 (quoting 49 U.S.C. §§ 40101(a)(6), 40101(a)(12) (formerly codified at 49 U.S.C.App. §§ 1302(a)(4), 1302(a)(9))). Permitting full operation of New York's age discrimination law will not affect competition between airlines--the primary concern underlying the ADA. Unlike the regulation of marketing practices at issue in Morales or the regulation of frequent flyer programs at issue in Wolens, whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency. Although one may argue that shedding older workers can result in savings, such savings will result in a better competitive position only indirectly, if at all. Moreover, to the extent that the scope of the protected group in age discrimination statutes may vary from jurisdiction to jurisdiction, state and local age discrimination laws are little different from generally applicable tax, environmental, or blue sky laws, which as a general matter are not preempted under the ADA.
 
 
 22
 Moreover, even were we to consider the actual impact of New York human rights laws on Delta's prices, we would reach the same result on the record before us. Initial preemption issues usually do not require extensive examination of the underlying facts of the case. Thus, the district court's reluctance to examine "the particular liability exposure in this case" and deference to Delta's representation that the claims would affect price and services is understandable. See 927 F.Supp. at 112. However, sometimes even a jurisdictional issue may even require a lengthy trial.[5] This may be another such case where preemption can not be easily determined from the pleadings. Thus, while in the abstract post-retirement medical benefits and pilot pay scale could affect price, we do not see that substantiated in this particular case.
 
 
 23
 Delta claims and the district court accepted that the state laws "would have a direct economic impact on the price it charges consumers." To Delta it is a matter of simple economics that plaintiffs' claims indisputably relate to Delta's rates. In general, Delta argues that an airline's principal source of revenue is from its passenger fares so that whatever an airline has to pay out in salaries and benefits would impact its prices. Delta argues paying out more in salaries and benefits would increase its costs, and it would have to increase its prices to stay in business.
 
 
 24
 Plaintiffs, however, dispute the common economic relationship between costs and prices as applied to airline pricing, and we agree with the plaintiffs that under the peculiar circumstances of airline pricing such a relationship is not a matter of simple economics. As a matter of airline economics, not every airline cost has the requisite connection with and effect on fares to justify preemption. As the Supreme Court recognized in Morales, airline fare pricing is based on "yield management," a unique formula largely controlled by the forces of demand and competition, not costs. See 504 U.S. at 389, 112 S.Ct. at 2039-40 (explaining yield management without using the term "yield management"). Indeed, in their opening brief in the Supreme Court in Morales, fourteen airlines involved in that case, but not including Delta, explained airline pricing practices as follows:
 
 
 25
 Airlines currently employ extremely sophisticated computer programs to allocate fare on a flight-by-flight, day-by-day basis under "yield management" systems designed to ensure that each flight takes off with as many seats filled as possible. Under this system, airlines continuously analyze the demand for seats on each flight and alter the mix of different fares in order to fill the flight. The number of seats available at different fares can change up to the departure of the flight.... Moreover, fare adjustments are also made in order to meet competition from other airlines.
 
 
 26
 (Pls.' Addendum at 29, U.S. Supreme Ct. Resp. Br. in Morales at 29-30).
 
 
 27
 Plaintiffs point out additional support for this pricing argument in a recent airline industry treatise:
 
 
 28
 In no other industry has the idea of demand-based pricing been as thoroughly embraced as in the airline industry. Since the early days of deregulation, domestic carriers and, increasingly, international flag carriers, have realized that they cannot price on a cost plus basis. Unfortunately, this has led many pricing organizations to ignore cost and, more importantly, supply in making pricing decisions. The simple realization that airline seats are, for the most part, a commodity product has led airlines to match competitive actions quickly without carefully analyzing the implications to the supply/demand balance.
 
 
 29
 Steven S. Kretsch, Airline Fare Management and Policy, in Handbook of Airline Economics, 477, 480 (Darryl Jenkins et al. eds., 1995) (emphasis added). Delta does not contend that it adheres to a different pricing practice.
 
 
 30
 It seems that under this pricing structure, even if plaintiffs' demands would increase fixed costs, they would have an inconsequential impact on Delta's pricing. (According to plaintiffs the total damages sought, including for benefits payable in the future, even if all paid at once by Delta, would amount to about 0.86% of Delta's 1995 expenses and about 0.81% of Delta's 1995 revenues.) Thus, even if we considered their actual effect on prices, the city and state statutes would not warrant preemption.
 
 D. Preemption Based on Affect on Services
 
 31
 With respect to the seniority claims, the district court accepted Delta's argument that altering seniority would disrupt flight deck harmony and thus affect services. However, the record does not support that claim. Plaintiffs point out that in a pending summary judgment motion also filed by Delta, Delta claimed it would receive no benefit in discriminating against plaintiffs on the basis of age since seniority affects only the rights between the pilots themselves for the purposes of their bidding for flights and job assignments. In the summary judgment motion, Delta argued that pilot seniority does not affect the company itself. Plaintiffs in turn argue that Delta cannot have it both ways, claiming in one motion that it has no motive to discriminate because seniority is no concern to the company, and then claiming that seniority does affect the company because it impacts flight deck relationships, thereby affecting services. We agree. Thus, even considering the actual effect, Delta seems to have failed to establish that plaintiffs' claims affect its services.
 
 CONCLUSION
 
 32
 In his concurring opinion in Dillingham Construction, Justice Scalia labelled the ERISA preemption clause an "illusory test," a description which also fits the similar ADA preemption clause. California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring). We appreciate the difficulties for all parties, including the district court, but we can offer no bright line relief. Our only recourse is to apply the ADA preemption provision as we understand its meaning on a case-by-case basis.
 
 
 33
 In possible preemption areas where common federal and state interests exist, courts should seek, if possible, some reasonable and uniform accommodation which does not frustrate either the full congressional purposes and objectives or state policies in determining the relationship between federal and state laws. If that is not possible, and state law interferes and conflicts with federal law, then federal law must prevail. Clearly state law cannot interfere, conflict with, or frustrate federal law lest it be federal law that is preempted by the state. If state laws, however, are preempted merely because they can be said to broadly and generally "relate to prices or services" only in some tenuous, remote or peripheral way and thus preempted, then it is federal law which is unnecessarily interfering with legitimate state laws and policies. We do not believe that congressional intent should be so broadly interpreted without clear justification.
 
 
 34
 In this case the New York state and local laws do not directly affect prices, routes or services and although enforcement of the claims may have some effect on prices, routes or services, nothing in the record suggests that this effect is the type of effect which Congress intended to prohibit under the ADA. Thus, the supposed state interference is too "tenuous, remote or peripheral" to justify the preemption of New York's applicable laws, and we do not believe that we may sustain the district court's finding of preemption on this record. To borrow the flight vernacular that the First Circuit used in French v. Pan Am Express Inc., 869 F.2d 1 (1st Cir.1989), New York's laws have not yet been "grounded."
 
 
 35
 The other related issues pled were neither discussed or resolved by the district court, so we will not attempt to resolve them here. They remain in the case for the further consideration of the district court as it may deem necessary. This case must therefore be remanded to the district court for further consideration of those issues.
 
 
 36
 REVERSED AND REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Harlington Wood, Jr., Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Abdu-Brisson v. Delta Air Lines, Inc., 927 F.Supp. 109 (S.D.N.Y.1996)
 
 
 [2]
 The ADA in part provides as follows:
 [A] State [or a] political subdivision of a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier....
 49 U.S.C. § 41713(b)(1).
 
 
 [3]
 49 U.S.C.App. §§ 1302(a) and (9)
 
 
 [4]
 See, e.g., California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)
 
 
 [5]
 See, e.g., Sherrill v. McShan, 356 F.2d 607, 608 (9th Cir.1966)