**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES W. SMITH,
Plaintiff-Appellant,

v.

COMAIR, INCORPORATED; DELTA
AIRLINES, INCORPORATED,
Defendants-Appellees.

No. 96-2451

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-95-1319-R)

Argued: December 5, 1997

Decided: January 15, 1998

Before WILKINSON, Chief Judge, ELLIS,
United States District Judge for the Eastern District of Virginia,
sitting by designation, and MERHIGE,
Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Ellis and Senior Judge Merhige joined.

_____

**COUNSEL**

**ARGUED:** Randy Virlin Cargill, MAGEE, FOSTER, GOLDSTEIN
& SAYERS, Roanoke, Virginia, for Appellant. Robert Stewart Bal-

lou, JOHNSON, AYERS & MATTHEWS, Roanoke, Virginia, for
Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

James Smith sued Comair, Inc. and Delta Airlines, Inc. for breach
of contract, false imprisonment, and intentional infliction of emo-
tional distress. The district court granted summary judgment in favor
of Comair on the grounds that Smith's claims are preempted by the
Airline Deregulation Act of 1978 (ADA) and, alternatively, that his
intentional tort claims must be dismissed for failure to state a claim.
Smith appeals. We agree that Smith's contract and tort claims are pre-
empted to the extent they complain of Comair's boarding procedures.
Furthermore, to the extent Smith's tort claims rest on allegations dis-
tinct from Comair's refusal to allow him to board, we agree that they
should be dismissed. Accordingly, we affirm the judgment of the dis-
trict court.

I.

Because the instant case comes to us at the summary judgment
stage, we review the evidence in the light most favorable to Smith,
the nonmoving party. Hartsell v. Duplex Prods., Inc., 123 F.3d 766,
768 (4th Cir. 1997). On the morning of October 5, 1995, Smith
boarded a 6:40 a.m. Comair flight in Roanoke, Virginia to travel to
Minneapolis, Minnesota, with a layover in the Cincinnati airport.
Comair representatives did not ask Smith for proof of identification
when he boarded the flight in Roanoke. In Cincinnati, Smith met
some business associates and together they attempted to board the
9:00 a.m. connecting flight to Minneapolis. When Smith began to
board, however, the Comair representative asked him "to step aside."
After complying with this request and watching the rest of the flight's
passengers board, Smith asked why he was not permitted to board. A
Comair representative told Smith that a supervisor would be called.
The supervisor, Mr. Price, arrived approximately thirty minutes after
the Minneapolis flight's departure. According to Smith, Price would

2

not explain why Smith could not fly out of the Cincinnati airport. Meanwhile, Smith also noticed for the first time two security guards standing approximately fifty and seventy feet away observing him. Smith testified that these officers watched him throughout the rest of his stay in the Cincinnati airport.

Three hours later, Price finally told Smith he was denied permission to board the Minneapolis flight because he did not match the physical description contained in his Delta frequent-flyer account. Smith, however, called his company's travel agent and learned that Delta did not maintain a record of physical descriptions in connection with frequent-flyer accounts. Smith, therefore, located Price and confronted him with this information. Price continued to insist that the dissimilar physical description was the reason Smith was not permitted to board.

At approximately 1:00 or 2:00 p.m., Price returned to Smith and told him the real reason he was refused permission to board was that the Roanoke Comair representatives had failed to ask for photo identification, as shown by the absence of pink highlighting on his boarding pass. At some point, Price explained that the Federal Aviation Administration ("FAA") required photo identification pursuant to security regulations. Smith replied that he could not produce his driver's license because he had left it in the glove compartment of his car, which was parked at the Roanoke airport. Price then asked Smith instead for his birth certificate and social security card, neither of which Smith had at the time. Smith offered to have his physical description faxed by the Virginia Department of Motor Vehicles ("DMV") or to pay Comair's expenses if they would enter his car, retrieve his driver's license, and fly it to Cincinnati on the next available flight. Price refused both options, as DMV could not fax a photo and entering Smith's car might expose Comair to liability.

Finally, sometime after 3:00 p.m., Price gave Smith a ticket to Roanoke and told him Comair would return him there. While waiting to board the flight, Smith spoke to Price again and stated that he was so angry he "would like to punch [Price] in the mouth." In response, Price motioned for the two security guards Smith previously had observed, one of whom was a Cincinnati police officer. When the two approached and restrained Smith, Price asked them to remove Smith

3

from the terminal. After Smith explained his situation to the guard and police officer, the officer intervened on Smith's behalf and convinced Price to permit Smith to fly to Roanoke. Smith then returned to Roanoke.

Smith filed a motion for judgment in the Circuit Court for the City of Roanoke, alleging breach of contract, false imprisonment, and intentional infliction of emotional distress. After the case was removed to the United States District Court for the Western District of Virginia, the district court granted summary judgment in favor of Comair. The court found that Smith's claims were preempted by the ADA and that his tort causes of action failed to state a claim. Smith now appeals.

II.

The scope of federal preemption under the Airline Deregulation Act has not been considered in this circuit, so it is appropriate first to review the statute's preemption provision, the Supreme Court's decisions interpreting that provision, and federal law concerning the boarding practices of airlines. The Act provides:

> [A] State, political subdivision of a State, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). The Supreme Court first considered the scope of preemption under the ADA in <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374 (1992). It noted that section 41713(b)(1) was enacted "[t]o ensure that the States would not undo federal deregulation with regulation of their own." <u>Id.</u> at 378. Focusing on the statutory phrase "relating to" the Court held that "the words thus express a broad pre-emptive purpose." <u>Id.</u> at 383.* Claims that have "a con-

_____

*Before recodification in 1994, the preemption clause read, in relevant part: "[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law <u>relating to</u> rates, routes, or services of any air carrier . . . ." 49 U.S.C. App. § 1305(a)(1) (Supp. 1994) (emphasis added).

4

nection with, or reference to" an airline's prices, routes, or services are therefore preempted under the statute. Id. at 384. Specifically, the Court stated that even general statutes, when particularly applied to the airline industry, are preempted. Id. at 386. However, state actions that would affect airline prices, routes, or services "`in too tenuous, remote, or peripheral a manner'" would not be preempted. Id. at 390 (citation omitted). Applying these principles, the Court held that the ADA preempted the specific application of general state consumer protection statutes to airline fare advertising.

The Court next considered the ADA's preemption clause in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). In accord with Morales, the Court held plaintiffs' claims under the Illinois Consumer Fraud Act were preempted, because such actions served "to guide and police the marketing practices of the airlines." Wolens, 513 U.S. at 228. However, the Court carved out an exception to ADA preemption for contract claims against airlines such as those involving frequent-flyer programs, even when related to prices, routes, or services. The Court reasoned that such contract actions merely seek to enforce the parties' "own, self-imposed undertakings." Id. The Court, however, limited its breach-of-contract exception to actions confined to the terms of the parties' bargain, "with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 233. Thus, when a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the ADA.

Significantly, when Congress deregulated the airline industry in 1978 by passing the ADA, it retained statutory provisions granting broad discretion to airlines in making safety-related boarding decisions. See Air Transportation Security Act of 1974, Pub. L. No. 93-366, § 204, 88 Stat. 409, 418. The current version of that statute provides, in part: "Permissive refusal.-- Subject to regulations of the Administrator, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C.§ 44902(b). Air travel in modern society presents formidable safety and security concerns and often passengers with criminal intentions are the source of that threat. Federal law -- in conjunction with its broad preemption of state-law claims related to airlines' services -- appropriately grants

5

airlines latitude in making decisions necessary to safeguard passengers from potential security threats. Section 44902(b) recognizes airlines' boarding practices as a specific area of federal concern.

III.

A.

Smith first contends that the Supreme Court's decision in <u>Wolens</u> saves his breach-of-contract claim from preemption by the ADA. He argues that by refusing him permission to board his flight, Comair breached a general contractual duty to transport him to Minneapolis. Smith, however, fails to appreciate the effect Comair's federal defenses have on the preemption question presented in this appeal. Because Comair invokes defenses provided by federal law, Smith's contract claim can only be adjudicated by reference to law and policies external to the parties' bargain and, therefore, is preempted under the ADA.

<u>Wolens</u> recognized that state contract claims escape preemption only when courts would be confined to the terms of the parties' agreement. Here Comair invokes federal law in two respects. First, the company argues it was entitled to prevent Smith from boarding by the federal statute granting just such discretion for safety-related reasons -- 49 U.S.C. § 44902(b). Second, Comair argues it had a legal duty to refuse Smith permission to board under heightened FAA security directives that became effective the evening before Smith's flight. In response to those FAA directives, Comair required that ticketed passengers between the ages of eighteen and sixty present either official photo identification issued by a government authority or two forms of identification, one of which had to be issued by a government agency. <u>See</u> Froendhoff Aff. ¶¶ 4-6. Smith's failure to produce identification implicated the safety concerns of both the statute and the FAA directive. Because Smith's contract claim is based upon Comair's refusal to permit him to board, it directly implicates the airline's discretion and/or duty under federal law. Accordingly, the contract claim is preempted under the ADA. <u>See O'Carroll v. American Airlines, Inc.</u>, 863 F.2d 11, 12-13 (5th Cir. 1989) (relying on prior versions of 49 U.S.C. § 44902(b) and § 41713(b)(1) to hold claim alleging wrongful exclusion from flight preempted).

6

Furthermore, Comair's preemption argument is distinguishable from that presented by American Airlines in <u>Wolens</u>. American Airlines argued that whether it breached the frequent-flyer contract depended on resolution of the external policy issue of whether to recognize American's express reservation of the right to modify the rules governing its frequent-flyer contracts. 513 U.S. at 233-34. The Court summarily rejected this argument, explaining that interpretation of the company's express reservation was merely another issue within the parties' contractual relationship and therefore not preempted. <u>Id.</u> at 234. Comair's argument is different in one important respect: The company claims that to determine whether it breached its contract with Smith, a court must look to federal law, which is clearly external to the parties' agreement. Because a court adjudicating Smith's contract claim could not confine itself to the terms of the parties' bargain, <u>Wolens</u> is not controlling.

Finally, Smith's contract claim must be held to be preempted under the ADA because of its practical effect on federal law in this area. If passengers could challenge airlines' boarding procedures under general contract claims alleging failure to transport, we would allow the fifty states to regulate an area of unique federal concern -- airlines' boarding practices. <u>See Hodges v. Delta Airlines, Inc.</u>, 44 F.3d 334, 339 (5th Cir. 1995) (en banc) (allowing claims alleging wrongful exclusions from flights "would result in significant <u>de facto</u> regulation of the airlines' boarding practices"). Pursuant to 49 U.S.C. § 44902(b), airlines must be accorded broad discretion in making boarding decisions related to safety. Allowing Smith's claim to proceed would frustrate this important federal objective. Airlines might hesitate to refuse passage in cases of potential danger for fear of state-law contract actions claiming refusal to transport. We hold, therefore, that Smith's specific contract claim is preempted under the ADA.

B.

Smith next contends that his false imprisonment and intentional infliction of emotional distress claims are not preempted. He admits that an airline's boarding practices are properly considered a "service" under section 41713(b)(1) of the ADA, which preempts state laws "related to a price, route, or service of an air carrier." Smith, however, argues that tort claims are not preempted if premised upon unreason-

7

able conduct that is unnecessary to the provision of a service. Rombom v. United Air Lines, Inc., 867 F. Supp. 214, 222 (S.D.N.Y. 1994). He characterizes Comair's conduct during his encounter as so outrageous as to be unrelated to the provision of a service.

To the extent Smith's intentional tort claims are premised on Comair's refusal to permit him to board his flight, we believe they are preempted. To determine whether a claim has a connection with, or reference to an airline's prices, routes, or services, we must look at the facts underlying the specific claim. Travel All Over The World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996). Smith's tort claims are based in part upon Comair's refusal of permission to board. Undoubtedly, boarding procedures are a service rendered by an airline. Hodges, 44 F.3d at 336, 339; Chukwu v. Board of Dirs. British Airways, 889 F. Supp. 12, 13 (D. Mass. 1995), aff'd mem., 101 F.3d 106 (1st Cir. 1996). Therefore, to the extent Smith's claims are based upon Comair's boarding practices, they clearly relate to an airline service and are preempted under the ADA. Chukwu, 889 F. Supp. at 13-14; Williams v. Express Airlines I, Inc., 825 F. Supp. 831, 833 (W.D. Tenn. 1993).

We agree with Smith that, to the extent his claims are based on conduct distinct from Comair's determination not to grant permission to board, his false imprisonment and intentional infliction of emotional distress claims are not preempted. Suits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to an airline's services. Rombom , 867 F. Supp. at 222, 224. If, for example, an airline held a passenger without a safety or security justification, a claim based on such actions would not relate to any legitimate service and would not be preempted. See Chrissafis v. Continental Airlines, Inc., 940 F. Supp. 1292, 1298-99 (N.D. Ill. 1996) (distinguishing false imprisonment claims held preempted because based on airline's refusal to transport and claims held not preempted because based on airline causing arrest without proper factual basis).

To the extent Smith's tort actions are not preempted, we agree with the district court that he failed to state a claim. Because Virginia follows a lex loci delicti standard, Jones v. R.S. Jones & Assocs., Inc.,

8

431 S.E.2d 33, 34 (Va. 1993), and the incidents underlying Smith's claims occurred in the Cincinnati airport located in northern Kentucky, his tort claims are governed by Kentucky law.

Smith argues he was falsely imprisoned primarily because Comair flew him to the Cincinnati airport and stranded him there. These allegations, however, fail to state a claim for this tort. Kentucky defines false imprisonment as "`[a]ny exercise of force, by which in fact the other person is deprived of his liberty and compelled to remain where he does not wish to remain or to go where he does not wish to go.'" Wal-Mart Stores, Inc. v. Mitchell, 877 S.W.2d 616, 617 (Ky. App. 1994) (quoting Great Atlantic & Pacific Tea Co. v. Smith, 136 S.W.2d 759, 767 (Ky. 1940)). Smith's evidence simply does not show that he was compelled either to remain or to go anywhere he did not wish. He conceded that no Comair representative told him that he must remain in any specific part of the airport or that he was not free to leave the airport. Price told Smith only that Comair would not permit him to board the flight out of Cincinnati. Smith was therefore free at all times to leave the airport or leave Cincinnati altogether by any means he could arrange other than a Comair flight. False imprisonment results only if "the restraint be a total one, rather than a mere obstruction of the right to go where the plaintiff pleases." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 11, at 47 (5th ed. 1984). Smith also briefly asserts that restraint by the security officers constituted false imprisonment. However, even he admits that the officers grabbed his arms only momentarily and nonforcefully, and then immediately interceded on his behalf by convincing Price to permit Smith to board a flight back to Roanoke. Smith's evidence thus fails to support a claim for false imprisonment.

Smith next contends that Price's outrageous behavior-- lying and rudely failing to assist Smith -- constitutes intentional infliction of emotional distress. We disagree. The Kentucky Supreme Court, in adopting Restatement (Second) of Torts § 46 (1965), has stated that "the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." Humana of Ky., Inc. v. Seitz, 796 S.W.2d 1, 2-3 (Ky. 1990). In Humana, the Kentucky Supreme Court refused to find conduct it labeled as "cold, callous, and lacking sensitivity [and] . . . compassion" to meet this requirement. Id. at 4. Price's conduct was unques-

9

tionably rude and unprofessional, but it was not so outrageous and intolerable as to satisfy the high standard set by the Kentucky Supreme Court. And though Comair has doubtless lost the goodwill of a customer, it did not commit a tort. Smith "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d. The Kentucky Supreme Court also held in Humana that "the emotional distress must be severe." 796 S.W.2d at 3. In his deposition, however, Smith conceded that the events of October 5 have had almost no effect on his life: "[P]ersonally it has not affected me." Because Smith fails to satisfy at least two elements of an intentional infliction of emotional distress action, we find the district court properly granted summary judgment in favor of Comair on that claim.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

10