**James R. WOODSON and Mable Woodson, Plaintiffs,**

v.

**US AIRWAYS, INC.; Mike Doe; and Shelly Doe, Defendants.**

No. 1:99CV00311.

United States District Court,
M.D. North Carolina.

Aug. 19, 1999.

Jeffrey Dean Patton, Blanco Tackabery Combs & Matamoros, P.A., Reginald F. Combs, Blanco Tackabery Combs & Matamoros, P.A., Charles D. Luckey, Blanco Tackabery Combs & Matamoros, P.A., Winston–Salem, NC, for James R. Woodson, Mable Woodson, plaintiffs.

Sarah Boucher Kemble, Robinson, Bradshaw & Hinson, P.A., Frank E. Emory, Jr., Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for US Airways, Inc., Mike Doe, Shelly Doe, defendants.

### MEMORANDUM OPINION

BULLOCK, Chief Judge.

This matter is before the court on a partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure brought by Defendants U.S. Airways, Inc. ("US Airways"), Mike Doe, and Shelly Doe (collectively "Defendants"). This action arises out of Plaintiffs' claim that they were denied permission to board a U.S. Airways flight from Charlotte, North Carolina, to San Juan, Puerto Rico, because of their race. For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part.

### FACTS [1]

Plaintiffs James and Mable Woodson ("the Woodsons"), who are African–American, purchased electronic tickets for U.S. Airways Flight 1677 from Charlotte, North Carolina, to San Juan, Puerto Rico, with a scheduled departure time of 11:15 a.m. on January 25, 1999. The Woodsons received pre-assigned seating for the flight.

The Woodsons checked their baggage at the curbside check-in and arrived at the appropriate boarding gate at sometime between 10:55 and 11:05 a.m. At that time, the Woodsons were greeted by defendant Shelly Doe, an employee of U.S. Airways, who told the Woodsons that their seats were still available and instructed them to board the airplane. Once on board, the Woodsons noticed that the plane was full and that two Caucasian passengers who had boarded prior to the Woodsons remained standing in the aisle without seats. After sitting for approximately fifteen to twenty minutes, a second U.S. Airways employee, defendant Mike Doe, approached the Woodsons and told them that there was a "weight and balance" problem and that "because the Woodsons were the last two persons to board the aircraft" they would have to de-plane. (Pls.' Compl. ¶ 17). The Woodsons explained to Mike Doe that they were scheduled to board a cruise ship in San Juan, Puerto Rico, at 8:00 p.m. that evening. Mike Doe re-

---

1. At this stage of the proceeding, the court accepts all of Plaintiffs' well-pleaded allega- tions as true.

sponded that U.S. Airways had another flight to San Juan which would have them in Puerto Rico in time to meet their cruise ship. Based on these assurances, the Woodsons agreed to de-plane. After leaving the plane, the Woodsons' seats were taken by the two Caucasian passengers whom the Woodsons had earlier seen standing without seats.

After leaving the plane, the Woodsons learned that there were no U.S. Airways flights or any flights on any other airline which would arrive in San Juan before their cruise ship departed. The Woodsons were referred to a customer service desk and, after a forty minute wait, Shelly Doe arrived. Shelly Doe informed the Woodsons in a rude and condescending tone that their tickets had been cancelled for violating the "ten-minute rule." (Pls.' Compl. ¶ 26). The Woodsons reminded Shelly Doe that she was the person who instructed them to board the plane, but she dismissed the Woodsons and threatened to call security. The Woodsons then demanded to speak to Shelly Doe's supervisor. Approximately twenty minutes later, the U.S. Airways concourse manager, Kevin Coomer, arrived. The Woodsons told Coomer what had happened to them. Coomer responded that their tickets had been cancelled for violating the ten-minute rule and that he could not understand how they could have violated the rule if they had been allowed to board the plane. Coomer agreed to investigate the situation. In addition, Coomer arranged alternative travel arrangements which enabled the Woodsons to meet their cruise ship at its second port of call, St. Thomas, United States Virgin Islands.

The Woodsons assert that their de-planing was racially motivated so as to provide seats for the two Caucasian passengers. In addition, the allegedly pretextual manner in which they were induced to leave the plane by Mike Doe and the offensive manner in which they were thereafter treated by Shelly Doe are alleged to have been racially motivated. Based on these allegations, Plaintiffs assert two claims based on federal law and six claims based on state law. The federal claims allege: (1) a violation of the Civil Rights Act, 42 U.S.C. § 1981; and (2) a violation of the anti-discrimination provision of the Federal Aviation Act (FAA), 49 U.S.C. § 41310. The state law claims are for: (1) unfair and deceptive trade practices; (2) breach of contract; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) fraud; and (6) negligent supervision.

## DISCUSSION

Dismissal under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

Defendants have moved to dismiss all of Plaintiffs' claims with the exception of the Section 1981 claim. Defendants first argue that the preemption clause of the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1), preempts Plaintiffs' state law claims because those claims are "related to" U.S. Airways' booking and boarding procedures. Defendants then argue that Plaintiffs' claim based on the FAA's anti-discrimination provision is invalid because that provision is applicable to foreign air transportation only.

### A. *Whether the ADA preempts Plaintiffs' state law claims*

■ The ADA's preemption provision provides that:

[A] State, political subdivision of a State, or a political authority of at least two States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to

a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). Congress enacted this provision "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In *Morales,* the Supreme Court first addressed the scope of preemption under the ADA. After referring to the preemption standard under ERISA, because that statute's preemption language is identical to the ADA's, the Court held that a state law is "related to" airline prices, routes, or services if it has "a connection with or reference to airline 'rates, routes, or services.'" *Id.* at 384, 112 S.Ct. 2031. The Court noted, however, that state actions which affect a price, route, or service in "too tenuous, remote, or peripheral a manner" would not be preempted. *Id.* at 390, 112 S.Ct. 2031. As the Court of Appeals for the Second Circuit has noted, although the standard can be simply stated "its practical application in particular circumstances is difficult." *Abdu–Brisson v. Delta Air Lines, Inc.,* 128 F.3d 77 (2d Cir.1997).

As the parties' briefs indicate, courts interpreting the scope of preemption under the ADA have failed to reach consistent results. Indeed, it is noteworthy that the only two cases which have dealt with the preemption issue in the context of a passenger's claim of racial discrimination have reached different results. *Compare Doricent v. American Airlines, Inc.,* 1993 WL 437670 (D.Mass. Oct.19, 1993) (state law tort and civil rights claims not preempted by the ADA), *with Huggar v. Northwest Airlines, Inc.,* 1999 WL 59841 (N.D.Ill. Jan.27, 1999) (state law tort claims preempted by the ADA, state law breach of contract claims not preempted by the ADA). While the Fourth Circuit recently considered the issue of ADA preemption in *Smith v. Comair, Inc.,* 134 F.3d 254 (4th Cir.1998), this court finds that the present case is distinguishable from *Smith* in at least two important respects. First, procedurally the *Smith* case was decided at the summary judgment stage. While preemption issues do not usually require an extensive factual examination, the Second Circuit has noted that preemption issues must be decided on a case-by-case basis and sometimes cannot be decided at the pleading stage. *See Abdu–Brisson,* 128 F.3d at 84–86. This appears to be such a case.

Second, the plaintiff in *Smith* was attempting to utilize state law to challenge Comair's boarding procedures, many of which were subject to federal regulation. In particular, the plaintiff in *Smith* could not have prevailed on his breach of contract claim without overriding federal regulations providing Comair with the discretion to require presentation of identification prior to boarding. *See Smith,* 134 F.3d at 258. In contrast, although the Woodsons' claims in this case arose in connection with the boarding of an airplane, they are not challenging any boarding practice or procedure of U.S. Airways. Thus, at least when looking only to the allegations in Plaintiffs' complaint, it does not appear that a ruling in favor of the Woodsons would impact U.S. Airways' ten-minute rule or any other "service" related to boarding. In short, the court is not persuaded at this stage that *Smith* compels a ruling in Defendants' favor.

In addition, the court notes that resolving the preemption issue at this stage will not conclude the case because Plaintiffs' Section 1981 claim will proceed at least to the summary judgment stage. Accordingly, because this issue presents an important and difficult question of first impression within this circuit and which involves an issue which may not be appropriate for resolution at the pleading stage, the court will deny Defendants' motion to dismiss Plaintiffs' claims based on state law. The court will reconsider this issue, if necessary, at the summary judgment stage.

**B.** *Whether Plaintiffs' claim based on the FAA's anti-discrimination provision is invalid*

■ The FAA's anti-discrimination provision provides that "[a]n air carrier or foreign air carrier may not subject a person, place, port, or type of traffic in *foreign air transportation* to unreasonable discrimination." 49 U.S.C. § 41310(a) (emphasis added). The phrase "foreign air transportation" means "the transportation of passengers or property by aircraft as a common carrier for compensation . . . between a place in the United States and a place outside the United States when any part of transportation is by aircraft." 49 U.S.C. § 40102(23). In contrast, "interstate transportation" means transportation between a "State, territory, or possession of the United States and a place in the District of Columbia or another State, territory or possession of the United States." 49 U.S.C. § 40102(25)(A)(1). Finally, the FAA defines the United States as "the States of the United States, the District of Columbia, and the territories and possessions of the United States, including the territorial sea and overlying airspace." 49 U.S.C. § 40102(a)(41).

The court agrees with Defendants that, based on these definitions, Plaintiffs' flight involved interstate transportation and not foreign air transportation because Puerto Rico is considered to be a state or territory of the United States. *See Mora v. Mejias*, 206 F.2d 377, 387 (1st Cir.1953) (Puerto Rico has "become a State within a common and accepted meaning of the word"); *Popular Democratic Party v. Commonwealth of Puerto Rico*, 24 F.Supp.2d 184, 193 (D.P.R.1998) ("Juridically speaking, Puerto Rico continues to be an unincorporated territory of the United States . . . .").[2] Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' second cause of action based on the FAA's anti-discrimination provision.

**2.** Puerto Rico is explicitly defined as a "State" under immigration and nationality laws. *See* 8 U.S.C. § 1101(a)(36). In addi-

## CONCLUSION

For the foregoing reasons, the court will deny Defendants' motion to dismiss Plaintiffs' state law claims and will grant Defendants' motion to dismiss Plaintiffs' claim based on the anti-discrimination provision of the Federal Aviation Act.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion to dismiss [Doc. # 3] is **DENIED** as to Plaintiffs' claims based on state law [Claims 3 through 8 of the Complaint].

IT IS FURTHER ORDERED that Defendants' motion to dismiss [Doc. # 3] is **GRANTED** as to Plaintiffs' claim based on the Federal Aviation Act [Claim 2 of the Complaint], and that claim is **DISMISSED.**

tion, persons born in Puerto Rico on or after January 13, 1941, are United States citizens. *See* 8 U.S.C. § 1402.